Kevin G. Little, SBN 149818
Law Office of Kevin G. Little
Post Office Box 8656
Fresno, California  93747
Telephone:  (559) 342-5800
Facsimile:  (559) 420-0839
E-Mail:  kevin@kevinglittle.com

Attorneys for Plaintiff Virna L. Santos

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA – FRESNO DIVISION

| | |
|---|---|
| VIRNA L. SANTOS,<br><br>Plaintiff,<br><br>v.<br><br>LORETTA E. LYNCH, ATTORNEY GENERAL, UNITED STATES DEPARTMENT OF JUSTICE,<br><br>Defendant. | Case No.<br><br>COMPLAINT FOR DAMAGES<br><br>Title VII - Retaliation, Harassment and Termination, 42 U.S.C. § 2000e-3(a)<br><br>JURY TRIAL DEMANDED |

TO THE HONORABLE COURT:

Plaintiff Virna L. Santos, through her undersigned counsel, hereby makes the following allegations against the defendant:

## JURISDICTION AND VENUE

1. This Court has original jurisdiction in this proceeding pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, as this action is one arising under the federal civil rights laws.

2.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e)(1)(A) and (C), as this is an action against the United States that does not involve real property, and the plaintiff resides in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

3.     Plaintiff has exhausted her administrative remedies.  Specifically, plaintiff filed a timely EEO complaint with the Department of Justice and files this action within 90 days of her receipt of the December 15, 2015 agency decision.  *See* Exhibit A.  Plaintiff, through her undersigned counsel, received the agency decision on or about December 21, 2015.  *See* Exhibit B.

## THE PARTIES

4.     Plaintiff Virna L. Santos ("Santos") is a citizen and resident of the State of California, County of Fresno.  Santos is an attorney licensed to practice law in California since 1990.  During the time period relevant to the cause of action stated herein, Santos was employed by the United States Department of Justice, Criminal Division, Office of Overseas Prosecutorial Development, Assistance and Training ("DOJ-OPDAT"). From March 2011 until December 2013, Ms. Santos was Regional Director of Latin America and the Carribean, and from December 2013 until September 2014, Santos was Regional Director of the Judicial Studies Institute.

5.     Defendant Loretta E. Lynch ("Lynch") is the Attorney General of the United States and in that official capacity serves as the head of the United States Department of Justice.  Lynch is sued in her official capacity and had no personal involvement in the acts alleged herein.

## FACTUAL ALLEGATIONS

6.     Santos engaged in protected activity which resulted in a pattern of retaliation and harassment against her.  By July 2012, Santos had received three complaints from female Resident Legal Assistants (RLAs) in Mexico indicating that their direct supervisor, Senior RLA Kevin

Sundwall ("Sundwall"), had created a gender hostile environment and had also engaged in unwanted physical contact with at least one of the RLAs he was harassing that made her feel uncomfortable.  Santos dutifully brought these issues to the attention of her supervisors Carl Alexandre ("Alexandre"), the then Director of DOJ-OPDAT, and Faye Ehrenstamm (Ehrenstamm"), the then Deputy Director of DOJ-OPDAT.  Santos also objected to and took issue with what she perceived as efforts by Alexandre and Ehrenstamm to retaliate against the complaining female RLAs.  Santos also brought these issues to the attention of Alexandre's and Ehrenstamm's supervisor, Deputy Assistant Attorney General Bruce Swartz ("Swartz") during a meeting held in October 2012.  All of the female RLAs who complained against Sundwall were removed from Mexico, and Sundwall suffered no adverse consequences.  Santos voiced her displeasure with this result.

7.    Santos' evaluation was delayed until February 2013, at which time she was told that, while her performance had been good, she had exposed DOJ-OPDAT leadership to the front office.  Santos was told during this same meeting that her continued tenure would not be guaranteed and that she would have to reapply for her same position.  Santos again objected that she made a good faith report of gender discrimination and harassment that should not be held against her.

8.    In July 2013, one of the persons under Santos' supervision, DOJ-OPDAT Colombia Program Director Paul Vaky ("Vaky"), touched her inappropriately.  This inappropriate touching was witness and verified by others present.  This incident was even more humiliating because Santos had been removed shortly before from involvement in an investigation into Vaky's misuse of $477,000 in government funds, with then Acting Director Ehrenstamm bypassing Santos.  Santos reported Vaky's inappropriate touching to DOJ-OPDAT Human Resources and also to

Ehrenstamm.  Nothing was done.  In fact, shortly after this complaint, Santos was demoted from Regional Director of Latin America and the Carribean, which she managed a $60,000,000 budget and supervised more than 50 employees, to Regional Director of Judicial Studies, where her budget was less than $1,000,000 and she had one part-time employee under her supervision.  Even further, after Santos' September 2014 termination, Vaky was promoted to a Regional Director position within DOJ-OPDAT, despite his inappropriate touching of Santos the year before and also despite his proven financial misconduct.

9.     As foreshadowed above and as set forth in detail in Exhibit A, which is incorporated herein by reference, Santos' protected activities resulted in reprisals against her.  The retaliation and harassment to which Santos was subjected included, but was not necessarily limited to, undermining her authority, singling her out for disparate treatment, bypassing her regarding subject matters within her areas of responsibility, making false allegations of dishonesty, misconduct and poor performance against her, demoting her to a less prestigious position with less responsibility and authority, and, finally, terminating her based on false grounds of a lack of funding.

DAMAGES

10.    Santos has been damaged severely as a result of the foregoing misconduct.  Santos was terminated from a position that paid her more than $150,000 per year, plus excellent benefits that included health and life insurance, a thrift savings account, and an education savings account.  Based on Santos' having approximately 20 years of her working career remaining, her economic damages are staggering.  Santos also was damaged in her professional reputation and opportunities for future advancement in the federal government.  Santos was also forced to leave behind her family home in order to return to her state of bar admission and provide for her family.

11.     Santos also has substantial general damages, which include, emotional distress, mental anguish, humiliation, and the stress of having to uproot her family and return to California.

CAUSE OF ACTION

Retaliation/Reprisal for Engaged in Conduct Protected by Title VII

42 U.S.C. § 2000e-3(a).

12.     Santos incorporates the foregoing allegations as if set forth herein.

13.     Santos engaged in or was engaging in an activity protected under Title VII, that is (1) her involvement in raising the gender hostile environment claims of the three female RLAs with her superiors at DOJ-OPDAT and the DOJ; (2) her taking exception to what she perceived as retaliation against the three female RLAs; (3) her taking exception to her being retaliated against for raising these issues and "exposing [DOJ-OPDAT] to the front office;" and (4) her complaining about Vaky's inappropriate touching of her.

14.     Based on these protected activities, Santos was subjected to adverse employment actions, as alleged above in paragraph 9.

15.     Santos was subjected to these adverse actions precisely because of her protected activities.

16.     Santos was damaged as a result of this retaliation, as alleged in paragraphs 10 and 11.

REQUEST FOR RELIEF

17.     Based on the foregoing, Santos requests relief as follows:

a.     An award of compensatory economic and non-economic damages, including compensation for both past and future losses.

b.     Prejudgment interest.

c.     Attorney's fees.

1

      d.     Cost of suit.

2

      e.     Ancillary relief, including the expungement of any negative entries in Santos'

3

personnel file.

4

      f.     Any further just and proper relief.

5

6

DEMAND FOR JURY TRIAL

7

   18.   Santos demands a trial by jury, consistent with her rights under the Seventh

8

Amendment and the 1991 Civil Rights Act.

9

10

Dated:  March 13, 2016                  /s/ Kevin G. Little

11

                                      Kevin G. Little

12

                                        Attorney for Plaintiff

13

                                        Virna L. Santos

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**U.S. Department of Justice**

# Complaint of Discrimination
*(See instructions on reverse)*

PRIVACY ACT STATEMENT: 1. AUTHORITY- The authority to collect this information is derived from 42 U.S.C. Section 2000e-16; 29 CFR Sections 1614.106 and 1614.108.
2. PURPOSE AND USE-This information will be used to document the issues and allegations of a complaint of discrimination based on race, color, sex (including sexual harassment), religion, national origin, age, disability (physical or mental), sexual orientation or reprisal.

The signed statement will serve as the record necessary to initiate an investigation and will become part of the complaint file during the investigation; hearing, if any; adjudication; and appeal, if one, to the Equal Employment Opportunity Commission. 3. EFFECTS OF NON-DISCLOSURE-Submission of this information is MANDATORY. Failure to furnish this information will result in the complaint being returned without action. Text

| | |
|---|---|
| 1. Complainant's Full Name<br>Virna L. Santos | 2. Your Telephone Number *(including area code)*<br>Home  202-378-4974  (cell) |
| Street Address, RD Number, or Post Office Box Number<br>1529 Casino Circle | Work  203-696-3027  (only through 9/2014) |
| City, State and Zip Code<br>Silver Spring, MD 20906 | |

| | |
|---|---|
| 3. Which Department of Justice Office Do You Believe Discriminated Against You?<br>Office of Overseas Prosecutorial Development, Assistance and Training (OPDAT), Criminal Division | 4. Current Work Address<br>1331 F Street NW, 7th Floor<br>Washington, DC' |
| | A. Name of Agency Where You Work<br>OPDAT, Criminal Division, Department of Justice |
| B. Street Address of Office<br>1331 F Street NW | B. Street Address of Your Agency<br>1331 F Street NW |
| | C. City, State and Zip Code<br>Washington D.C. |
| C. City, State and Zip Code<br>Washington D.C. | D. Title and Grade of Your Job<br>Trial Attorney, 15-10 |

**5. Date on Which Most Recent Alleged Discrimination Took Place**

| Month | Day | Year |
|---|---|---|
| 8 | 25 | 2014 |

ongoing to the present

**6. Check Below Why You Believe You Were Discriminated Against?**

- ☐ Race or Color *(Give Race or Color)* _____
- ☐ Religion *(Give Religion)* _____
- ☑ Sex *(Give Sex)*  ☐ Male  ☑ Female
  - ☑ Sexual Harassment
- ☐ Age *(Give age)* _____
- ☐ National Origin *(Give National Origin)* _____
- ☐ Disability    ☐ Physical    ☐ Mental

- ☐ Genetic Information
- ☐ Sexual Orientation
- ☐ Gender Identity
- ☑ Reprisal
- ☐ Parental Status
- ☐ Class Complaint

7. Explain How You Believe You Were Discriminated Against *(treated differently from other employees or applicants)* Because of Your Race, Color, Sex (including sexual harassment), Religion, National Origin, Age, Disability (physical or mental), Genetic Information, Sexual Orientation, Gender Identity, Parental Status, or Reprisal. Do not include specific issues or incidents that you have not discussed with your EEO Counselor. *(You may continue your answer on another sheet of paper if you need more space.)*
The denial of my term appointment extension is the latest negative action in a series of retaliatory acts following my having denounced what I believed in good faith were incidents of discriminatory and hostile work environments and misuse of government funds in the programs under my supervision as Regional Director for Latin America and the Caribbean. My superiors told me that while I had done an excellent job, I had nonetheless exposed OPDAT to the front office. Thereafter, I was subjected to a pattern of harassment and discrimination, included denial of my holiday leave, covert investigation into whether I had received e-mails, demotion from my position, disparate treatment as compared to my Regional Director counterparts, among other acts.

8. What Corrective Action Do You Want Taken on Your Complaint?
I request that pattern of discrimatory and retaliatory acts cease and desist. Corrective action should include revision of my latest performance evaluation to remove all unjustified negative assessments of my performance. I also request that my term appointment be extended for two years, until September 30, 2016 as is customary for other term employees and is appropriate given my excellent work performance. If reinstatement or extension of my term appointment is not feasible, I request full compensatory damages available under applicable law, 42 U.S.C. § 2000, et seq.

| 9. A) I have discussed my complaint with an Equal Employment Opportunity Counselor and/or other EEO Official. | B) Name of Counselor | |
|---|---|---|
| **DATE OF FIRST CONTACT WITH EEO OFFICE:**  7  8  2014 | **DATE OF RECEIPT OF NOTICE OF FINAL INTERVIEW WITH EEO COUNSELOR:**  8  14  2014 | Leisa Bush-Yillah<br><br>☐ I Have Not Contacted an EEO Counselor |

**10. Date of This Complaint:**

| Month | Day | Year |
|---|---|---|
| 8 | 25 | 2014 |

11. Sign Your Name Here:
Virna L. Santos   */s/ Virna Santos*

# EXHIBIT A

Virna L. Santos
Chronology in Support of Formal EEO Complaint 8-25-14

As the following chronology shows, I have been discriminated against for reporting gender discrimination against other employees under my supervision, and the actions taken in reprisal against me have included a number of distinct, but coordinated acts that were intended to create a hostile environment and to terminate my employment. I also have received disparate treatment vis á vis my male counterparts. I have also have been subjected to baseless criticism and investigations, while legitimate acts of gender discrimination against me and other females have been essentially ignored. I have also complained about financial misconduct in this mixed case.

## 2011

**March** - Begin work as Regional Director at OPDAT. Responsibilities included supervising large Colombia and Mexico programs, administering over $60 million in program funds and increasing the region's portfolio both in number of programs and amount of funding. Director Carl Alexandre informs that among my duties was "to get a handle on" the Colombia program that had been difficult to manage.

**May** - Complaint from Resident Legal Advisor (RLA) Karine Moreno-Taxman about gender bias and hostile work environment in Mexico program led by Senior RLA Kevin Sundwall, located in the U.S. Embassy in Mexico City.

## 2012

**March 11** - Meeting with Paul Vaky, Carl Alexandre and Faye Ehrenstamm to discuss difficulties in management of the Colombia program.

**July 20** - Receive via e-mail written report from RLA Jeanette Mercado Rios alleging hostile work environment and gender discrimination in Mexico program led by RLA Kevin Sundwall.

**July 25 -** Received RLA Rene Holmes' complaint alleging hostile work environment in Mexico program via e-mail.

**July 30** - Memo to file regarding incident in Colombia involving Program Manager Paul Vaky questioning my judgment in including Program Analyst Ronald Williams in a bilateral meeting. Upon my return, informed Director Alexandre that my management efforts were being undermined and could not effectively manage the Colombia program. I requested his assistance and support.

**August -** Begin effort to conduct internal audit of Colombia program finances in expectation of an audit requested by our funder, State Department's Office of International Narcotics and Law Enforcement (INL)

Program Manager Paul Vaky, my former supervisor during my three and half year tenure as Resident Legal Advisor in Colombia, strongly resisted these audit efforts orally and in writing. Vaky instructed the staff to not call me directly or cooperate with the audit.

1

**August 3** - Forward to Director Carl Alexandre complaints from RLA Rene Holmes regarding hostile work environment in Mexico program.

**August 5** - Transmit e-mail report from Jeanette Mercado-Rios alleging hostile work environment and gender discrimination issues in Mexico.

**September 11** - Receive series of e-mails from Director Alexandre and Deputy Director Faye Ehrenstamm accusing me of purposefully missing a meeting with an Argentinean delegation.  Said meeting was not on my calendar and in any case would have been superseded by last minute meeting with DAAG Bruce Swartz.

**October 2** - Director Carl Alexandre visits Mexico to speak with staff.

**October 5**- Learn by e-mail from OPDAT Director Carl Alexandre that he intended to remove RLA Mercado-Rios from her Mexico post.  I was concerned that this is retaliation for having made a complaint against RLA Sundwall.

Also in October, I participated in a meeting with DAAG Bruce Swartz, Director Alexandre, Deputy Director Faye Ehrenstamm, DAAG Bruce Ohr to discuss my concerns about discriminatory work environment allegations by RLAs Mercado-Rios and Holmes and that the planned reassignment of Mercado-Rios to another post or back to her district could be seen as an act of retaliation following her complaint.  During the meeting, Director Alexandre represented that he believed the issues in the Mexico program were management issues.  I reiterated my concerns based on my knowledge of three separate complaints from female attorneys about hostile and discriminatory treatment.  Deputy Director Ehrenstamm disagreed that these complaints could be based on gender discrimination because the other female RLA had no such complaints.  By the end of the meeting, it was agreed that all members of the team, except for the non-complaining female RLA, would be reassigned to other posts or returned to their home offices.

**October 9**- E-mail exchange between then Deputy Director Faye Ehrenstamm and Administrative Officer Laurel Glenn regarding replacement of a signature page on an RLA's performance evaluation.  Deputy Director Ehrenstamm claims we are trying to blame her and Paul Vaky for the mishandling of the paperwork.

**October 16-24**- I receive a series of e-mails claiming I received e-mail from Paul Vaky that I did not in fact receive.  Learned later from Laurel Glenn, Administrative Office, that former Director Carl Alexandre requested that Information Technology department verify whether I had received the e-mail.  IT subsequently verified that I did not receive Paul Vaky's e-mail.  See Exhibit 1, attached hereto.

**December 26-27-** Series of mails regarding denial of holiday leave based on my alleged failure to request leave to be included in an office matrix.  The e-mails from management claimed that I was absent without authorization.  A November 2012 e-mail showed that I had indeed requested leave and that it had been mistakenly left off the matrix.  There was

no acknowledgement of this mistake by management. See e-mails attached hereto as Exhibits 2 and 2a.

## 2013

**February 14**- Meeting with OPDAT Director Carl Alexandre's office and Deputy Director Faye Ehrenstamm during which I was handed my overdue evaluation.  Former Director Alexandre informed that although I had done a good job in using my connections to increase the Latin America and Caribbean region's portfolio and created the Judicial Studies Institute, "you exposed us to the front office."  He further informed that they would be advertising my position and that I was free to apply for it but they wanted to go a different way and that I would always have a home at OPDAT.  In response, I explained that I had denounced what I believed to be in good faith an incident of gender discrimination and hostile work environment in the Mexico program.

**February 28**- Director Alexandre leaves OPDAT.  Faye Ehrenstamm becomes Acting Director.

**May 31**- Colombia Program Manager Paul Vaky makes unauthorized transfer of $477,000 in government funds to the Colombia Attorney General's Office using a document that authorized purchases of software and equipment instead. See Exhibits 3 and 3a, attached hereto,

I was excluded from conversations with Program Manager Paul Vaky about this matter, even though I was his direct supervisor during this time.  See Exhibits 4 and 4a, attached hereto.  No investigation of Program Manager Paul Vaky's actions, including potential conflict of interest due to his wife's employment by grant recipient or reprimand followed.

The inaccurate balance of unspent funds was the result of Program Manager Paul Vaky's lack of cooperation with audit process, causing negative financial repercussions to the program.

**July 23**- During visit to OPDAT program in Bogota, Colombia, Program Manager Paul Vaky inappropriately and without consent touched my lower back and top of my buttock as I was leaning to ask him a question in a low voice because we were inside a courtroom. I immediately told him not to touch me and walked away.  Program Analyst Damian Fagon witnessed the incident and prepared a written report.  I reported this incident in writing to Acting Deputy Director Christopher Lehmann and Acting Director Faye Ehrenstamm.

**July 31**- I gave a statement to Rene Caputo from the Human Resources Department regarding the inappropriate touching incident described above.  Acting Director Faye Ehrenstamm is present at meeting.

**August -** Faye Ehrenstamm is appointed OPDAT Director.

**October 16**- Paul Vaky e-mails Acting Deputy Director Chris Lehmann how unfair he thinks it is that some Colombia funding is being used for the Judicial Studies Institute, deliberately excluding me from this e-mail even though I supervised both the Colombia program and the Judicial Studies Institute, showing management's acquiesce with this kind of secretive communication.

**November 4**- Process of demotion from Regional Director for Latina America and the Caribbean to Regional Director of Judicial Studies begins.  I went from supervising four programs in Colombia, Mexico, El Salvador and the Caribbean with over $60 million in funding and over 50 employees to managing less than $1 million and only one Program Analyst.

I received a reassignment memorandum to Acting Deputy Attorney General seeking I be named in new capacity of Regional Director of Judicial Studies stating that "Ms. Santos is highly qualified for this position.  She has nearly six years of experience designing, managing and implementing OPDAT criminal justice assistance programs."

**November 8**- Memo of conversation with Administrative Officer Laurel Glenn during which she informed that then Deputy Director Ehrenstamm had requested during the summer that Ms. Glenn write a negative report about me regarding the completion of performance evaluations and that she had been specifically instructed not to run it through the e-mail.  When Ms. Glen completed the report, said report was rejected as not being negative enough about my performance.  See memo to file, attached hereto as Exhibit 5.

**December** - Acting Deputy Director Christopher Lehmann informs me of intended performance evaluation in which the narrative alludes to management deficiencies relating the Colombia program's finances.  I objected to this unjustified criticism in person and in writing.

**December**- Assume new title of Regional Director of Judicial Studies.

**December 5**- Meeting with Bruce Swartz, Faye Ehrenstamm, Acting Deputy Director Chris Lehmann regarding Director Ehrenstamm intention to take over JSI funding negotiations.  Following the meeting, I was precluded from participating in key funding negotiations for JSI, the only program I now manage.

## 2014

**January**- Office reassignment e-mails sent to staff in preparation for office move to new floor.  I learned that I would be assigned to the smallest office for attorneys.  My request for reassignment to another office based on title and seniority was denied.  My informal inquiries revealed that another office assignment plan existed assigning offices based on title and seniority and that said Director Faye Ehrenstamm rejected the plan.  Persons involved in this process informed that the topic of my office assignment was specifically

discussed over several days.  Director Ehrenstamm wanted to assign me to interior office. Witnesses will say that she was informed that this assignment would not pass muster, with words to the effect that she would not get away with it.

**March** - Signed my performance evaluation after discussing changes to the narrative that were in controversy.  I initially objected to the language in the narrative portion of the evaluation, which improperly and unjustifiable mischaracterized my communication style with attorneys I supervised at overseas posts. Said evaluation was overdue for months.

When I finally signed my evaluation, I did not closely look at the numerical value given in the categories of program process/project management; problem solving and judgment; leadership and development; and resource management.  All these were rated as 3 s.  I would not have signed my evaluation had I noted those unjustified rankings. The next day, on March 26, I requested in writing that these categories be revised based on my self-evaluation and my excellent performance in each of these areas.  Christopher Lehmann, my rating official, denied this request.  All of this was under time pressure because my rating official leaving the Department of Justice on March 28, 2014.

## June

**June 11**- Director Ehrenstamm notified me via e-mail that my term appointment would not be extended beyond its current expiration date of September 30, 2014 due to lack of funding.

**June 24**- I learned during our meeting with our Judicial Studies Institute funders, State Department's INL, that State Department had previously informed OPDAT Director Faye Ehrenstamm that State Department has agreed to share the costs of my Regional Director position at least by fifty percent (50%) and that a higher share is negotiable given the need to have an experienced prosecutor lead the JSI.

## List of Exhibits

Exhibit 1- Electronic mail message dated October 2012 regarding request that my claim that I had not received e-mail relating to Colombia USAID consultations.

Exhibit 2- Electronic mail messages relating to denial of holiday leave

Exhibit 2a- Electronic mail message showing leave had been timely requested

Exhibit 3- Electronic mail message from Director Faye Ehrenstamm re: lack of grant authority

Exhibit 3a-Electronic mail exchange with Andrew Lyons regarding Barranquilla BACRIM fund cite

Exhibit 4- Electronic message from Andrew Lyons informing that Virna Santos could not participate in discussions about Colombia grant.

Exhibit 4a-memo from Nicholas Cooper conveying State Department's reaction to unauthorized transfer of funds

Exhibit 5- Memo to file re: conversations with Administrative Officer Laurel Glenn re: request to prepare negative report

Exhibit 6 - June 24, 2014 Grievance Regarding Refusal to Extend Term

Exhibit 7 - July 2, 2014 Complaint Regarding Financial Misconduct to the Office of Special Counsel, including attachments
"
Gzj kdkv': "/"Cwi wuv'7. '4236'Ngwgt'htqo "Ou0'Dwuj /[ kncj "cf xkukpi "qh'Tki j v'vq 'Hkng'Hqto cn'Eqo r nckpv
"

Gzj kdkv'; "/"Vtcpuetkr v'qh'Lwn{"; . '4236'eqphgtgpeg'ecnï'kpvgtxkgy "y kqj 'GGQ 'Eqwpugnqt'NgkucDwuj /[ kncj "f qewo gp vkpi "vj cv'Eqo r nckpv'vghettgf "vq 'j quvkng'gpxktqpo gp v'encko u'ci ckpuv'WUU0'Mgxkp'Uwpf y cm 'pqv' ugz wcn'j ctcuuo gp v'encko u.'cu'wncvgf "tp"vj g'Cwi wuv'7. '4236'Eqttgur qpf gpeg'htqo "Ou0'Dwuj /[ kncj "
"

Gzj kdkv'32"/"G'O ckn'Uvtkpi "dgy ggp"Eqo r nckpv'vq 'eqwpugnï'cpf "Ngkuc 'Dwuj /[ kncj "tg<'j quvkng'gpxktqpo gp v xgtuwu'ugz wcn'j ctcuuo gp v'encko u'cuugtvgf 0'
"

Gzj kdkv'33"/"Wpkqgf "Uvcvgu'Rqunvcn'Ugtxkeg'Tgeqtf "qh'Tgegkr v'eqphkto kpi "vj cv'Eqo r nckpv'vq 'eqwpugnï tgegkxgf "vj g'Cwi wuv'7. '4236'Ngwgt'qp 'Cwi wuv'36. '4236"

# Exhibit 1

From:    Alexandre, Carl
Sent:    Tuesday, October 23, 2012 6:40 PM
To:      Santos, Virna L.
Cc:      Ehrenstamm, Faye S.
Subject: RE: USAID annual meeting with NGOs
Attachments:    Re: USAID annual meeting with NGOs

Importance:      High

Virna, I have been looking into your assertion that you were never informed
about this invitation. The below email dated Sunday, October 14, on this
subject was sent by Paul to your DOJ account. I was about to call Paul to
criticize him for not coordinating with you, but fortunately for me, I
forwarded your email to Faye since you once again failed to copy her on an
important office related matter.  Only through Faye who was copied on Paul's
original email did I learn that Paul emailed you during the weekend about his
unavailability. Needless to say I am very concerned when I am unable rely on
the representations made to me by any employee, but it is particularly
troubling when I can't rely on representations made to me by a Regional
Director. Please help me understand what is going on here.  Based on what I
know, the facts are inconsistent with your claim that you were not informed.
Carl

-----Original Message-----
From: Santos, Virna L.
Sent: Tuesday, October 16, 2012 9:54 AM
To: Alexandre, Carl; Ehrenstamm, Faye S.
Subject: Re: USAID annual meeting with NGOs

I just searched my e-mail and could not find said message on my BB. (I was on
travel on Sunday.) However, the important fact is that we did not coordinate
on this matter.


----- Original Message -----
From: Alexandre, Carl
Sent: Tuesday, October 16, 2012 09:48 AM

To: Ehrenstamm, Faye S.; Santos, Virna L.
Subject: Re: USAID annual meeting with NGOs

Virna, please explain your statement that you were not informed of this
meeting in light of the email Paul sent to you and others on Sunday.


----- Original Message -----
From: Ehrenstamm, Faye S.
Sent: Tuesday, October 16, 2012 09:37 AM
To: Alexandre, Carl; Santos, Virna L.
Subject: FW: USAID annual meeting with NGOs

Email below sent by Paul on Sunday to Virna, with copies to Nick and me.

-----Original Message-----
From: Vaky, Paul [mailto:VakyP@state.gov]
Sent: Sunday, October 14, 2012 3:37 PM
To: Santos, Virna L.
Cc: Cooper, Nicklous T; Ehrenstamm, Faye S.
Subject: USAID annual meeting with NGOs

Virna, USAID is holding their annual meeting with NGOs in Washington this
coming Friday the 19th. Donn Chisholm had asked if I would go.  I told him the
Brownfield visit would complicate my participation.   My suggestion has been
to excuse our participation indicating we are open to a meeting at another
time and willing to respond to written inquiries — similar to what we did a
few years back as you will recall. The other alternative is for you to present
if you want. We could prepare a presentation for you.


I have informed Don that I would ask you but that I was not sure that was
likely.   Please let me know if you want to participate. If not that is fine
we can manage this as we have done in the past

# Exhibit 2

| | |
|---|---|
| **From:** | Santos, Virna L. |
| **To:** | "Kevin Little" |
| **Subject:** | FW: Holiday leave |
| **Date:** | Wednesday, January 02, 2013 5:36:00 PM |
| **Attachments:** | Re Virna"s Denied Leave Request and Time Sheet for PP 26.msg |
| | Virna"s Denied Leave Request and Time Sheet for PP 26.msg |
| | Your Whereabouts This Week.msg |
| | Addendum Re Virna"s Denied Leave Request and Time Sheet for PP 26.msg |
| | Re Addendum Re Virna"s Denied Leave Request and Time Sheet for PP 26.msg |

Carl and Faye:

Below please find an e-mail in which I informed Ms. Moberly of my leave plans.  It took me two hours to locate this old e-mail.  I only did so in response to your repeated claims that I have violated rules without giving me an opportunity to even weigh in on the matter.  I again request that in the future, before jumping to conclusions, I am given an opportunity to at least give my perspective.  You had the opportunity to alert me to the fact that you intended to deny my leave request, based on an erroneous assumption.  This could have saved me a lot of time and aggravation.

I hope this puts an end to this incident and that we can move on to do our important work.


Virna L. Santos
Regional Director for Latin America and the Caribbean
Phone: (202) 353-3616
Mobile: (202) 445-5292
Virna.Santos@usdoj.gov


---

**From:** Santos, Virna L.
**Sent:** Monday, November 05, 2012 4:10 PM
**To:** Moberly, Suzanna
**Subject:** Holiday leave

These are my holiday leave plans:

11/23
12/26-1/2

Thank you.

Virna L. Santos
Regional Director for Latin America and the Caribbean
Overseas Prosecutorial Development, Assistance and Training (OPDAT)
U.S. Department of Justice
1331 F Street N.W., Suite 400
Washington, D.C. 20004-1107
Phone: (202) 353-3616
Mobile: (202) 445-5292
Fax: (202) 616-6770

Virna.Santos@usdoj.gov

# Exhibit 3

| | |
|---|---|
| **From:** | Ehrenstamm, Faye S. |
| **To:** | Nikolic, Borko (Belgrade); Rajkovic, Branislava (Belgrade); Ainsworth, Peter; Alexander, Glenn; Benedetto, James; Bonhomme, Vanessa; Butler, Mary; Carlberg, Russell; Cobar, Marlon; Coleman, Major; Connors, John; Dawson, Justin; De La Torre, Stacy; Dembosky, Luke; Eldridge, Cynthia; Engstrom, John; Gabel, Louis; Golden, Jay; Grad, Mary; Hill, Tanya; Holmes, Rene; Jenkins, Charles (USATXW); Kessler, Steven; Kimball, Jared; Kinney, Terry; Kohl, Ken (USADC); Kwapinski, Modest; Lakomy, Michelle; Latimer, Kyle; Lewis, David; Lulejian, John; Mercado-Rios, Jeanette; Molek, Theresa; Morgan, Brain; Neff, Steven; Peterson, Erik; Plagenhoef, Ruth; Rao, Vasantha; Smibert, Jon; Strang, Robert; Strasser, Peter; Taylor, Robin; Thomson, Robert; Thornton, Brenda Sue; Tirol, AnnaLou; Tomney, Brian (ODAG) (JMD); Vaccaro, Michael; Vaky, Paul; Warren, Jimmye; Woelfle, Marty; Yera, E.J. (USAFLS); Zolot, Kevin; Akdogan, Nilgun; Alisgandarov, Sabir; Avtutova, Liudmila; Baeza, Marisol; Bilal, Tahir; Budiningsih, Ade; Cayetuna, Sarah; Fedorchuk, Nazar; Fernandes, Ambrosio; Foltea, Radu; Haque, Shahedul; Ivanchenko, Olga; Janiceski, Filip; Jolic, Jelena; Kadhem, Hala; Khachaturyan, Davit; Khan, Saba; Kusari, Benina; Marina Moran Centeno, Berta; Niang, Douda; Panchan, Mingkwan; Patararia, Tatiana; Shafik, Miriam; Slinic, Elma; Soto, Guillermo; Spaseva, Vercia; Trepikhalin, Alexei; Tsnoriashvili, Nata; Yemeliova, Anna; Yue, Dong; Yunita, Cut; Ainsworth, Peter; Bowman, Robert; Crawford, Michele; Dorwin, Thomas; Huber, George; Kerney, Andria; Lee, Amy Chang; Lehmann, Christopher; Lipman, Robert; Michele Crawford (Michele_Crawford@ao.uscourts.gov); Newcombe, Catherine; Peebles, Thomas; Rosario-Munoz, Edna; Santos, Virna L.; Truebell, Beth; Woelfle, Marty; Baker, Caleb; Castaneda, Carlocesar; Clyne, Emily; Collins, Charles; Devine, Sarah; Fagon, Damian; Hollis, Jessica; Hsieh, Sonya; Kelly, Kyle; Parsons, Sara; Paul, Sarah; Piehl, Benjamin; Rasmussen, Mary; Van Fossen, Christine; Williams, Ronald; Barnette, Michael; Glenn, Laurel; Mclean, Laynetta; Moberly, Suzanna; Sudler, Delia; Andersson, Stephen; Chema, Richard; Ex, Charles; Muncy, Sherry; Wynne, Larry |
| **Cc:** | Lyons, Andrew; Segrest, Andrew; Brown, Lolita |
| **Subject:** | Important Policy Notice on Grants and Procurements |
| **Date:** | Thursday, June 13, 2013 8:07:22 PM |
| **Importance:** | High |

All,

Recently the subject of grant making to foreign governments arose here at HQ.

Please be advised that no OPDAT staff member, whether at HQ or overseas, can sign off on grant authorizations.  Indeed, as I know you all are aware, OPDAT staffers – with the exception of myself, Chris and Tom D (and there are limitations on us!) ---  cannot authorize or make any financial obligations, including equipment purchases, vendor contracts, supplies, leases and so forth.  While you can initiate purchase requests, the request must go through the proper procurement and/or grants procedures.

Below is specific guidance from Andrew Lyons of ITFM:

> Effective immediately, please be aware that DOJ OPDAT staff may not authorize grants to foreign governments using foreign assistance funds.  This includes both monetary and equipment grants.  All such transfers must be authorized by an appropriate State Department official (generally a warranted grant official).  This applies even if you are managing an IAA whose approved budget includes a grant to a foreign government.  In such cases, communicate with HQ so that we can help you liaise with State to ensure proper procedures are followed.
>
> This policy guidance from State/INL supersedes previous guidance – for example, in one post there has been a longstanding memorandum that permitted DOJ to use INL's

authorities through the LOA to provide host government advances.  That memo and any similar past policies or procedures are now null and void.

More generally, please bear in mind that RLAs are not financial management officers and thus not authorized to incur financial obligations on behalf of the U.S. government.  You can initiate purchase requests, sign to verify receipt of goods or services and perform similar functions related to financial transactions, but the transactions themselves must be authorized by the FMO.  With that in mind, please make sure any document you are asked to sign does not represent you as an approving budget official.

It is imperative to follow this guidance – otherwise we will have unauthorized expenditures for which the signatory may be liable, among other potential consequences.

Thanks in advance for your attention to this.

If you have any questions, please let me or Andrew (cc'd) know.

Faye

# Exhibit 3a

| | |
|---|---|
| **From:** | Lyons, Andrew |
| **To:** | Santos, Virna L. |
| **Cc:** | Fagon, Damian; Williams, Ronald; Ehrenstamm, Faye S.; Lehmann, Christopher |
| **Subject:** | RE: Barranquilla BACRIM fund cite issue |
| **Date:** | Tuesday, June 25, 2013 12:17:03 PM |

Virna,

Very many thanks for this information.

Regards,
Andrew

Andrew Lyons | U.S. Department of Justice | Criminal Division | Office of Administration | Principal Deputy Director, International Training Financial Management  |   (202) 616-4365


-----Original Message-----
From: Santos, Virna L.
Sent: Tuesday, June 25, 2013 11:42 AM
To: Lyons, Andrew
Cc: Fagon, Damian; Williams, Ronald; Ehrenstamm, Faye S.; Lehmann, Christopher
Subject: Barranquilla BACRIM fund cite issue

Andrew,

In preparation for any meetings with JSRP Colombia Program Manager Paul Vaky regarding the Barranquilla BACRIM fund cite matter, I wanted you to be aware of the information we had when these funds were requested.  PA Fagon has reviewed his correspondence with Paul on this matter, including an e-maill dated April 17, 2013 in which Paul states the urgent need for a fund cite for Fiscalia to complete an office refurbishing project in Barranquilla.  However, the fund cite request that was ultimately submitted was for technical assistance, computer equipment and software.  There was no request for funds to remodel the BACRIM office nor to make a cash grant.  As we have discussed, the fact that a cash grant was given to the Fiscalia in late May was first brought to our attention by State Department officials. As we also discussed, the most salient fact for me is the lack of notice before and after the grant was made despite the amount of publicity this grant giving ceremony received in country.

Please do not hesitate to contact me with any questions you may have about this matter.

Thank you.

# Exhibit 4

| | |
|---|---|
| **From:** | Lyons, Andrew |
| **To:** | Santos, Virna L. |
| **Subject:** | RE: Colombia |
| **Date:** | Tuesday, June 25, 2013 12:24:34 PM |

---

Virna,

Post sent me a packet of explanatory emails, which I have passed to Chris. Apologies, but I have been asked by your leadership not to circulate further within OPDAT until they have reviewed - so I need to refer you to Chris.

Similarly on the meeting. I have a 4pm tomorrow with Paul and Faye; it is probably the same one you are referring to below. I have spoken with Paul on the phone but do not have any other meetings scheduled with him.

Regards,
Andrew

-----Original Message-----
From: Santos, Virna L.
Sent: Tuesday, June 25, 2013 2:22 AM
To: Lyons, Andrew
Subject: Colombia

Could you please send me any explanatory e-mails you may have received from post relating to the Fiscalia grant?

Also, are you meeting with Paul regarding this matter? If so, may I participate by phone? I requested to participate in tomorrow's meeting between Faye, Chris and Paul but was told it was limited to those parties only.

Thank you.

Exhibit 4a

| | |
|---|---|
| **From:** | Ehrenstamm, Faye S. |
| **To:** | Cooper, Nicklous T; Lyons, Andrew; VakyP@state.gov; Lehmann, Christopher |
| **Cc:** | Santos, Virna L.; Yasofsky, Michael E |
| **Subject:** | RE: Procurement costs |
| **Date:** | Thursday, June 27, 2013 9:42:12 AM |

Thanks Nick – That does clear it up.  Faye

**From:** Cooper, Nicklous T [mailto:CooperNT@state.gov]
**Sent:** Thursday, June 27, 2013 9:40 AM
**To:** Lyons, Andrew; Ehrenstamm, Faye S.; VakyP@state.gov; Lehmann, Christopher
**Cc:** Santos, Virna L.; Yasofsky, Michael E
**Subject:** RE: Procurement costs

For my part, Story told me this yesterday during our meeting.

Story was talking about the recent donation to the Fiscalia for the BACRIM project and said that he and Walsh were opposed to donations of that type and that the way it was handled was not acceptably through INL channels.  He commented that the donation action was on Facebook and some comments there were very critical.  He advised DOJ has no grant authority.  That was the springboard into INL approvals and his mention of the $25K approval level.  Then he said such approval could be handled at Post.  He finally said we should consider procurements through NAS but he was not committal on that at this time.

I am not aware of the existence of any memo or written proposal related to local INL approval of procurements exceeding $25K.


Nicklous T. Cooper
Contractor-Operations Manager
US Department of Justice
American Embassy
Bogota, Colombia

Local Dial:   275-2269
U.S. Dial:    011 571 275-2269

Cell:  011 57 320 498-4330


-----Original Message-----
From: Lyons, Andrew [mailto:Andrew.Lyons@usdoj.gov]
Sent: Thursday, June 27, 2013 8:08 AM
To: Ehrenstamm, Faye S.; Vaky, Paul; Lehmann, Christopher
Cc: Santos, Virna L.; Cooper, Nicklous T
Subject: RE: Procurement costs

Faye, Paul and all,

I am confused by Faye's and Paul's references to Jimmy Story talking about procurements going through NAS.  Have I missed a memo?

Andrew

-----Original Message-----
From: Ehrenstamm, Faye S.
Sent: Thursday, June 27, 2013 8:59 AM
To: Lyons, Andrew; 'VakyP@state.gov'; Lehmann, Christopher
Cc: Santos, Virna L.; 'CooperNT@state.gov'
Subject: RE: Procurement costs

Andrew,

I am concerned that the NAS seems to feel that the $25,000 concept is actually in effect as a new policy.  As we discussed yesterday, this is a concept that is on the table, about which we are supposed to see a draft.

I would like to discuss this with Jim Walsh.

Perhaps you and I can call him today?

Faye

-----Original Message-----
From: Lyons, Andrew
Sent: Thursday, June 27, 2013 8:51 AM
To: 'VakyP@state.gov'; 'CooperNT@state.gov'
Cc: Ehrenstamm, Faye S.; Santos, Virna L.
Subject: Re: Procurement costs

I think that's the crux of what we need.  Nick, grateful you pull it together ASAP, since we would like to use the data to influence a new INL policy on our procurement that is currently being written.

Regards,
Andrew

----- Original Message -----
From: Vaky, Paul [mailto:VakyP@state.gov]
Sent: Thursday, June 27, 2013 08:32 AM Eastern Standard Time
To: Cooper, Nicklous T <CooperNT@state.gov>
Cc: Lyons, Andrew; Ehrenstamm, Faye S.; Santos, Virna L.
Subject: Procurement costs

Nick given Story's raising all procurements above $25,000 going thru NAS, can you coordinate data from all three entities (OPDAT, ICITAP and USMS) with respect to:
- how many procurements over $25,000 do we have monthly? Yearly?
- what are our admin/ICASS cost with respect to these procurements?

Andrew what else?


This email is UNCLASSIFIED.

# Exhibit 5

Memorandum re: Meeting with Laurel Glenn, Administrative Officer, OPDAT

November 8, 2012 at approximately 11:30 a.m. in my office


Laurel came to convey messages from Carl that he was upset that I was not receiving his notes attached to documents that needed to be revised.  I explained to Laurel that the task order in questions had been revised in accordance to a previous instruction to clarify whether the Adecco task order was new or modified and that the change was made.  As to the second revision, neither Ron nor I had seen it.  I informed Laurel that I would make sure Ron knew to show me any notes in the future.

I mentioned to Laurel that I was aware of the predatory scrutiny my work was undergoing and that this note issue was another instance of the same treatment.  Laurel then said that now that I had said that, she was glad and she had something to tell me.  She closed the door to my office.

She told me that early upon her tenure at OPDAT this summer, she was asked by Deputy Director Faye Ehrenstamm to print out e-mail corresponded relating to the requests for my submission of the performance evaluations I had to complete for the people I supervised.  The e-mail reflected my updates on when I would have the evaluations ready.  As I completed the evaluations, I would turn them over to Laurel who would then forward to Faye.  Laurel told me that she was directed to print out these e-mails and prepare an e-mail to showing that I was negligent in my duties relating to this administrative responsibility.  Faye instructed not to discuss this request on any e-mail and to only discuss it personally.  Laurel told me that she was new on the job and she wanted to please her supervisors.  She followed the instructions and wrote a memo setting the facts reflected on the e-mails: her requests and my responses.  She wrote an e-mail that she described as a factual chronology of the events with no characterization.  She told me that recently, Faye had returned the memo and the supporting documents stating that it was not good enough and that she had to explicitly say that I had been negligent in my duties.  Laurel told me that she did not intend to revise the memo.  She stated that she did not want to be used in that way and that she was embarrassed that she had agreed the memo in the first place.  She asked me not to divulge this information.

I thanked Laurel for telling me this and apologized to her because she was in the middle of this.

Exhibit 6

**Letter of Grievance Regarding Office of Overseas Prosecutorial Development
Assistance and Training's (OPDAT) Dismissal**

This constitutes my grievance regarding the notice I received on June 11, 2014,
advising me that my term as Regional Director for Judicial Studies will not be
renewed beyond its current expiration date of September 30, 2014.  Specifically, I
was advised of the following by my Director, Faye Ehrenstamm:

> As you know, unfortunately, we have yet to receive any programmatic
> money to support your position and I cannot continue to draw upon our
> overhead reserves – as I have during this fiscal year -- to support the JSI
> position into the next fiscal year.

> I appreciate your many contributions to OPDAT  -- and we will continue to
> support JSI --- but given our overhead situation, I will not be able to extend your
> appointment beyond September 30th.

This adverse action is but the latest of a series of well documented retaliatory acts that
have been taken against me.  Beginning in the summer of 2012, I have repeatedly
complained, on behalf of other employees and myself of workplace gender and race
discrimination and sexual harassment.  During this same time period I have also
complained in good faith about the lack of financial accountability and misuse of
government funds in programs under my supervision.

As more fully described in the attached chronology, following my bringing these matters
to my superiors' attention, I have been demoted from my prior post as Regional Director
for Latin America and the Caribbean, unfairly criticized in my performance, subjected to
an unwarranted investigation regarding my e-mail account, capriciously denied leave, and
relegated to an undesirable office location not commensurate with my position, among
other acts.   All of these actions have been taken despite my having done an excellent job
in increasing my region's portfolio and also creating a prestigious and highly successful
judicial capacity building program.  The excuse that my position can only be funded
prospectively with "programmatic funds" is but a transparent continuation of this pattern
of retaliation.

Accordingly, I request that this retaliatory action against me be rescinded and that my
term be extended until September 30, 2016.  This would be the customary extension to
which I would be entitled based upon my excellent performance.

Virna L. Santos                                                    Dated: June 24, 2014

U.S. OFFICE OF SPECIAL COUNSEL
Form OSC-11 (2/28/14)

(202) 254-3600 / (202) 254-3670 / (800) 872-9855
OMB Control No. 3255-0002

# COMPLAINT OF POSSIBLE PROHIBITED PERSONNEL PRACTICE
## OR
## OTHER PROHIBITED ACTIVITY

# Exhibit 7

---

### IMPORTANT

**Before filling out this Office of Special Counsel (OSC) form, please read the following information about:(1) the required complaint format; (2) the scope of OSC's jurisdiction; and (3) certain OSC policies. OSC cannot investigate a complaint if it lacks jurisdiction over the subject matter. Further, filing a complaint with OSC will not extend any time limits that may exist under any other complaint procedures that may be available. It is important, therefore, that you consider whether OSC may lack jurisdiction over your complaint.**

**If you plan to file a complaint alleging reprisal for whistleblowing, important information about the elements required by law to establish such a violation is provided in Part 2 of this form (at page 4).**

---

## INFORMATION ABOUT FILING A COMPLAINT WITH OSC

**Required Complaint Form**. Complaints alleging a prohibited personnel practice, or a prohibited activity other than a Hatch Act violation, must be submitted on this form. OSC will not process complaints (except a complaint alleging only a Hatch Act violation) that are not submitted on this form. OSC will return the material received, with a blank complaint form to complete and return to OSC. The complaint will be considered to be filed on the date on which OSC receives the completed form. 5 C.F.R. § 1800.1, as amended.

**No OSC Jurisdiction**. OSC has no jurisdiction over complaints filed by employees of –

- the Central Intelligence Agency, Defense Intelligence Agency, National Security Agency, or other intelligence agency excluded from coverage by the President;
- the armed forces of the United States (*i.e.,* uniformed military employees);
- the General Accounting Office;
- the Postal Rate Commission; and
- the Federal Bureau of Investigation.

**Limited OSC Jurisdiction**. OSC has jurisdiction over certain types of complaints filed by employees of some agencies, as follows –

- Federal Aviation Administration employees alleging reprisal for whistleblowing;
- employees of government corporations listed at 31 U.S.C. § 9101 alleging reprisal for whistleblowing; U.S. Postal Service employees alleging nepotism; and
- Transportation Security Administration (TSA) employees alleging reprisal for whistleblowing: TSA non-screener employees may file complaints alleging retaliation for protected whistleblowing under 5 U.S.C. § 2302(b)(8). OSC will process these complaints under its regular procedures, including filing petitions with the Merit Systems Protection Board, if warranted. TSA security screeners may also file complaints alleging retaliation for protected whistleblowing under 5 U.S.C. § 2302(b)(8) pursuant to a Memorandum of Understanding (MOU) between OSC and TSA executed on May 28, 2002. The MOU and TSA Directive HRM Letter No. 1800-01 provide OSC with authority to investigate whistleblower retaliation complaints from screeners and recommend that TSA take corrective and/or disciplinary action when warranted. Additional information on OSC procedures for reviewing security screener whistleblower complaints under the MOU is available at http://www.osc.gov/tsa-info.htm.

*(over)*

---

### VISIT WWW.OSC.GOV
### FOR MORE INFORMATION ABOUT OSC JURISDICTION AND COMPLAINT PROCEDURES

## INFORMATION ABOUT FILING A COMPLAINT WITH OSC *(cont'd)*

**Election of Remedies for Employees Covered By a Collective Bargaining Agreement**. Pursuant to 5 U.S.C. § 7121(g), if you are covered by a collective bargaining agreement, you must choose one of three possible avenues to pursue your prohibited personnel practice complaint: (a) a complaint to OSC; (b) an appeal to the Merit Systems Protection Board (MSPB) (if the action is appealable under law or regulation), or (c) a grievance under the collective bargaining agreement. If you have already filed an appeal about your prohibited personnel practice allegations with the MSPB, or a grievance about those allegations under the collective bargaining agreement, OSC lacks jurisdiction over your complaint and cannot investigate it.

**Deferral of Certain Complaints Involving Discrimination.** Although OSC is authorized to investigate discrimination based upon race, color, religion, sex, national origin, age, or handicapping condition, as well as reprisal for filing an EEO complaint, OSC generally defers such allegations to agency procedures established under regulations issued by the Equal Employment Opportunity Commission (EEOC). 5 C.F.R. § 1810.1. If you wish to report allegations of discrimination based upon race, color, religion, sex, national origin, age, or handicapping condition, or reprisal for filing an EEO complaint, you should contact your agency's EEO office immediately. There are specific time limits for filing such complaints. Filing a complaint with OSC will not relieve you of the obligation to file a complaint with the agency's EEO office within the time prescribed by EEOC regulations (at 29 C.F.R. Part 1614).

> *Note*: This deferral policy does not apply to discrimination claims outside the jurisdiction of the EEOC, such as complaints alleging discrimination based upon marital status or political affiliation.

**Complaints Involving Veterans Rights**. By law, complaints alleging denial of veterans' preference requirements must be filed with the Veterans Employment and Training Service (VETS) at the Department of Labor. 38 U.S.C. § 4301, *et seq.*, and 5 U.S.C. § 3330a(a). Certain allegations of discrimination based on the past, current, or future performance of military service (*e.g.*, discrimination based on veteran or reservist status) may be filed with OSC. Thus, you are encouraged to contact OSC's Uniformed Services Employment and Reemployment Rights Act (USERRA) Unit by e-mail at userra@osc.gov or by telephone at 202-254-3600.

---

### SEND COMPLETED COMPLAINT FORMS TO OSC -

**By Mail:**    **Complaints Examining Unit**
                 **Office of Special Counsel**
                 **1730 M Street, N.W. (Suite 218)**
                 **Washington, DC 20036-4505**
**By Fax:**     **(202)254-3711**
**Electronically:**  WWW.OSC.GOV (AT "FILE COMPLAINTS ONLINE")

***PLEASE KEEP A COPY OF YOUR COMPLAINT, ANY SUPPORTING DOCUEMENTION, AND ANY ADDITIONAL ALLEGATIONS SENT IN WRITING TO OSC NOW, OR AT ANY TIME WHILE YOUR COMPLAINT IS PENDING***
*REPRODUCTION CHARGES UNDER THE FREEDOM OF INFORMATION ACT MAY APPLY TO ANY REQUEST YOU MAKE FOR COPIES OF MATERIALS THAT YOU PROVIDED TO OSC.*

***IF YOU ARE FILING AN ALLEGATION OF REPRISAL FOR WHISTLEBLOWING,***
*PLEASE SEE PART 2 OF THE COMPLAINT FROM, AT PAGES 4-5, FOR OTHER RECORDKEEPING CONSIDERATIONS.*

U.S. OFFICE OF SPECIAL COUNSEL                                      (202) 254-3600 / (202) 254-3670 / (800) 872-9855

**COMPLAINT OF POSSIBLE PROHIBITED PERSONNEL PRACTICE**
**OR**
**OTHER PROHIBITED ACTIVITY**

*(Please print legibly or type and complete all pertinent items. Enter "N/A" (Not Applicable) or "Unknown" where appropriate. (If more space is needed, use Continuation Sheet at page 12.)*

| PART 1: PROHIBITED PERSONNEL PRACTICES PROHIBITED ACTIVITY (GENERAL) |
|---|

1. Name of person seeking OSC action ("Complainant"):     Mr. (  )    Ms. ( ● )   Mrs. (  )   Miss (  )

   Virna L. Santos

   For USERRA complaints only - please provide the last digit only of your Social Security Number (SSN):
   (needed to determine jurisdiction under § 204(c)(2) of Public Law No. 108–454.)

2. Position, title, series, and grade: Regional Director for Judicial Studies (Attorney Advisor), GS 15-10

3. Agency name: U.S. Department of Justice, Office of Overseas Prosecutorial Development, Assistance and T🞦

4. Agency Address: 1331 F Street NW, Washington, DC 20530

5. Home or mailing address:   1529 Casino Circle, Silver Spring, MD 20906

6. Contact information: Telephone number(s): ( 202 )  378-4974                    (Home)

   (  )                                      (Office)  Ext.

   Fax number:   (  )

   E-mail address:  virnasantosdc@gmail.com

7. If you are filing this complaint as a legal or other representative of the Complainant, please supply the following information:

   Name and title of filer:        Mr.(  )        Ms.(  )        Mrs.(  )        Miss(  )

   Address:

   Telephone number(s): (  )                        (Home)

   (  )                        (Office)  Ext.

   Fax number: (  )

   E-mail address:

8. Are you (or is the Complainant, if you are filing as a representative) covered by a collective bargaining agreement? (Check one.)

   (  )Yes            (  ) No            ( ● ) I don't know

9. How did you first become aware that you could file a complaint with OSC?

   (  ) OSC Web site        (  ) OSC Speaker            (  ) OSC Brochure        (  ) OSC Poster
   (  ) NewsStory           (  ) AgencyPersonnel Office   (  ) Union              (  ) Co-worker
   ( ● ) Other (*please describe*): My attorney

   Date (approximate):  June 2014

**COMPLAINT OF POSSIBLE PROHIBITED PERSONNEL PRACTICE OR OTHER PROHIBITED ACTIVITY**
Page 2 of 12

10. What is the employment status of the person affected by the suspected prohibited personnel practice or other prohibited activity?
   (*Check all applicable items - more than one item may apply.*)

a. (   ) Applicant for Federal employment

b. ( ✓ ) Competitive Service

     (   ) temporary appointment          (   ) career or career-conditional appointment
     ( ✓ ) term appointment             (   ) probationary employee

c. (   ) Excepted Service

     (   ) Schedule A                 (   ) Postal Service
     (   ) Schedule B                 (   ) Tennessee Valley Authority
     (   ) Schedule C                 (   ) VA Dept. of Medicine and Surgery
     (   ) National Guard Technician     (   ) Veterans Readjustment Act (VRA)
     (   ) Non-appropriated Fund        (   ) Other (Specify)

d. (   ) Senior Executive Service (SES), Supergrade, or Executive Level

     (   ) career SES                (   ) Executive Level V or above (career) fund
     (   ) noncareer SES             (   ) Executive Level V or above (noncareer)
     (   ) career GS-16, 17, or 18      (   ) Presidential appointee (Senate-confirmed)
     (   ) noncareer GS-16, 17, or 18

e. (   ) Other

     (   ) civil service annuitant       (   ) military officer or enlisted person
     (   ) former civil service employee    (   ) contract employee
     (   ) competitive service         (   ) other (*specify*):
     (   ) excepted service           (   ) unknown

11. What other action(s), if any, have you taken to appeal, grieve, or report this matter under any other procedure? (*Check all that apply*.)

(   ) None, or not applicable                       Date:
(   ) Appeal filed with Merit Systems Protection Board (MSPB)    Date:
(   ) Petition for reconsideration of initial decision filed with MSPB    Date:
       Initial Decision No.
(   ) USERRA claim filed with VETS (Department of Labor)     Date:
       (Form VETS/USERRA/VP-1010)
( ✓ ) Grievance filed under agency grievance procedure      Date: 6-24-14
(   ) Grievance filed under negotiated grievance procedure    Date:
(   ) Matter heard by arbitrator under grievance procedure    Date:
(   ) Matter is pending in arbitration                 Date:
(   ) Discrimination complaint filed with agency         Date:
( ✓ ) Agency or Administrative Judge (AJ) decision on discrimination complaint appealed
       to Equal Employment Opportunity Commission    Date: 6-24-14
(   ) Appeal filed with Office of Personnel Management     Date:
(   ) Unfair labor practice (ULP) complaint filed with Federal Labor Relations Authority
       General Counsel                      Date:
(   ) Lawsuit filed in Federal Court             Date:
       Court name:
(   ) Reported matter to agency Inspector General       Date:
(   ) Reported matter to member of Congress         Date:
       Name of Senator or Representative:
(   ) Other (*specify*):

COMPLAINT OF POSSIBLE PROHIBITED PERSONNEL PRACTICE OR OTHER PROHIBITED ACTIVITY
Page 3 of 12

12. What official is responsible for the violation(s) that you are reporting, and what is his/her employment status? (*See question 10 for appropriate description of employment status. If space is needed to identify more than one official, use Continuation Sheet at page 12.*)

Name:  Faye Ehrenstamm

Position/Title:  Director/OPDAT

Employment Status:  Career appointment

13. What are the actions or events that you are reporting to OSC? (*To the extent known, specifically list: (a) any suspected prohibited personnel practices or other prohibited activity, <u>other than reprisal for whistleblowing</u>; and (b) any personnel actions involved. (<u>**IF YOU ARE ALLEGING REPRISAL FOR WHISTLEBLOWING, SKIP TO PART 2 ON THE NEXT PAGE**</u>. )*

14. Provide details of the actions or events shown in your response to question 13.  (*Be as specific as possible about dates, locations, and the identities and positions of all persons mentioned. In particular, identify actual and potential witnesses, giving work locations and telephone numbers when possible. Also, attach any pertinent documents that you may have. <u>Please provide, if possible, a copy of the notification of the agency's proposal and/or decision about the personnel action(s) covered by your request for OSC action.</u> If more space is needed, use Continuation Sheet at page 12.*)

15. What action would you like OSC to take in this matter (that is, what remedy are you asking for?)

## PART 2: REPRISAL FOR WHISTLEBLOWING

*__This part of the form is solely for use by persons alleging reprisal for whistleblowing (that is, persons who believe that personnel actions were taken, not taken, or threatened because of a whistleblower disclosure). Please read the introductory material before answering the questions that follow. If more space is needed, use the continuation sheet at page 12.__*

*Complainants __not__ alleging reprisal for whistleblowing should proceed to Part 3 ("Consent to Certain Disclosures of Information"), at page 9.*

### Reprisal for Whistleblowing Allegations

As a general rule, it is a prohibited personnel practice to take or fail to take, or threaten to take or fail to take, a personnel action because of a protected disclosure of certain types of information by a Federal employee, former employee, or applicant for Federal employment. 5 U.S.C. § 2302(b)(8).

### Legal Elements of a Violation

By law, certain elements must be present before OSC can establish that a legal violation of law has occurred. Two of the required elements that must be established are: (1) that a whistleblower disclosure was made; and (2) that an agency took, failed to take, or threatened to take or fail to take a personnel action because of the whistleblower disclosure. Your description of these elements will help OSC's investigation of your allegation(s).

### Protected Disclosures

A disclosure of information is a protected whistleblower disclosure if a Federal employee, former employee, or applicant for Federal employment discloses information which he or she reasonably believes evidences: (a) a violation of any law, rule, or regulation; (b) gross mismanagement; (c) a gross waste of funds; (d) abuse of authority; or (e) a substantial and specific danger to public health or safety.

### Covered Personnel Actions

The law prohibiting reprisal for whistleblowing requires proof that one or more of the following personnel actions occurred, or failed to occur, because of a protected disclosure:

    (1)    an appointment;
    (2)    a promotion;
    (3)    an action under 5 U.S.C. chapter 75 or other disciplinary or corrective action;

COMPLAINT OF POSSIBLE PROHIBITED PERSONNEL PRACTICE OR OTHER PROHIBITED ACTIVITY
Page 5 of 12

(4)   a detail, transfer, or reassignment;

(5)   a reinstatement;

(6)   a restoration;

(7)   a reemployment;

(8)   a decision about pay, benefits, or awards, concerning education or training if the education
        or training may reasonably be expected to lead to an appointment, promotion,
        performance evaluation, or other action described in 5 U.S.C. § 2302(a)(2);

(9)   a performance evaluation under 5 U.S.C. chapter 43;

(10) a decision to order psychiatric testing or examination; or

(11) any other significant change in duties, responsibilities, or working conditions.


### *Reporting Your Allegation(s)*

In the section that starts below (pages 6-8), provide the information requested about all disclosures that you believe led to reprisal by the agency involved. If more space is needed, use extra copies of page 6-8, or the Continuation Sheet at page 12. **If any of the disclosures were in writing, please provide a copy of the disclosure with your complaint**.

**IT IS IMPORTANT THAT YOU LIST ALL DISCLOSURES AND PERSONNEL ACTIONS INVOLVED IN YOUR COMPLAINT**. This is because: (1) failure to list any disclosure or personnel action may delay the processing of your complaint by OSC; and (2) a comprehensive listing will avoid disputes in any later Individual Right of Action (IRA) appeal that you may file with the Merit Systems Protection Board (MSPB) about its jurisdiction to hear case.

Additional allegations of reprisal for whistleblowing may be added to this complaint while it is pending at OSC. Submission of any such additional allegations to OSC **in writing** will help you if you decide to file any later IRA appeal with the MSPB. Form OSC-11a is available for that purpose at OSC's web site, under "Forms."

### *Appeal to the Merit Systems Protection Board (MSPB)*

If OSC fails to complete its review of your whistleblower reprisal allegation within 120 days after it receives your complaint, or if it closes your complaint at any time without seeking corrective action on your behalf, you have the right to file  IRA appeal with the MSPB. 5 U.S.C. § 1214(a)(3).

### *Recordkeeping*

To establish its jurisdiction over any later IRA appeal that you may file, the MSPB will require you to show that the appeal relates to the same whistleblower disclosure(s) and personnel action(s) involved in your complaint to OSC. A copy of the whistleblower reprisal allegations in your complaint, any supporting documentation about those allegations that you sent with the complaint, and any additional allegation of reprisal that you submitted in writing to OSC while the complaint was pending, will serve as proof in any IRA of the disclosure(s) and personnel action(s) involved in your OSC complaint. **IT IS IMPORTANT, THEREFORE, THAT YOU MAKE AND KEEP COPIES OF ALL THESE DOCUMENT FOR YOUR RECORDS**.

**MUST BE COMPLETED FOR ALL DISCLOSURES REPORTED IN THIS COMPLAINT**

| **A. WHAT INFORMATION WAS DISCLOSED?** *(DESCRIBE WHISTLEBLOWER DISCLOSURE).* | |
|---|---|
| I reported what I believe to be in good faith an incident of gender discrimination and hostile work environment on or about July 2012, after having received three separate complaints from female attorneys about work environment issues in the U.S. Embassy Mexico program I supervised. | **1. WHEN WAS THE DISCLOSURE MADE? (MO/DA/YR)** 07/20/12 <br><br> **2. TO WHOM (NAME AND TITLE) WAS THE DISCLOSURE MADE?** Carl Alexandre, Director and Faye Ehrenstamm, <br><br> **3. DISCLOSURE OF INFORMATION EVIDENCED** *(check all that apply):* <br> ( ✓ ) VIOLATION OF LAW, RULE, OR REGULATION <br> ( ) GROSS MISMANAGEMENT <br> ( ) GROSS WASTE OF FUNDS <br> ( ) ABUSE OF AUTHORITY <br> ( ) SUBSTANTIAL AND SPECIFIC DANGER TO PUBLICHEALTH OR SAFETY <br> ( ) NONE OF THE ABOVE <br><br> **4. WHAT PERSONNEL ACTION(S) OCCURRED, FAILED TO OCCUR, OR WAS THREATENED BECAUSE OF THE DISCLOSURE?** *(List all applicable personnel action numbers from pages 4-5).* reassignment, a performance evaluation under <br><br> **5. WHEN DID PERSONNEL ACTION(S) OR THREAT(S) OCCUR? (MO/DA/YR)** 10/9/12 |
| **B. WHAT INFORMATION WAS DISCLOSED?** *(DESCRIBE NEXT WHISTLEBLOWER DISCLOSURE).* | |
| I denounced the gross mismanagement and gross waste of funds by then Colombia Program Manager Paul Vaky as a result of his unauthorized transfer of funds, via check, to the Attorney General of Colombia. Said transfer resulted from the purposeful circumvention of the funds controls that I supervised and enforced as Regional Director for Latin America and the Caribbean. The DOJ Justice Sector Reform Program in Colombia was under my direct supervision. | **1. WHEN WAS THE DISCLOSURE MADE? (MO/DA/YR)** 06/25/13 <br><br> **2. TO WHOM (NAME AND TITLE) WAS THE DISCLOSURE MADE?** Faye Ehrenstamm, Director <br><br> **3. DISCLOSURE OF INFORMATION EVIDENCED** *(check all that apply):* <br> ( ) VIOLATION OF LAW, RULE, OR REGULATION <br> ( ✓ ) GROSS MISMANAGEMENT <br> ( ✓ ) GROSS WASTE OF FUNDS <br> ( ) ABUSE OF AUTHORITY <br> ( ) SUBSTANTIAL AND SPECIFIC DANGER TO PUBLICHEALTH OR SAFETY <br> ( ) NONE OF THE ABOVE <br><br> **4. WHAT PERSONNEL ACTION(S) OCCURRED, FAILED TO OCCUR, OR WAS THREATENED BECAUSE OF THE DISCLOSURE?** *(List all applicable personnel action numbers from pages 4-5).* reassignment, a performance evaluation under <br><br> **5. WHEN DID PERSONNEL ACTION(S) OR THREAT(S) OCCUR?** (MO/DA/YR) 06/25/13 |

**MUST BE COMPLETED FOR ALL DISCLOSURES REPORTED IN THIS COMPLAINT**

| C. WHAT INFORMATION WAS DISCLOSED? *(DESCRIBE NEXT WHISTLEBLOWER DISCLOSURE)*. | |
|---|---|
| | **1. WHEN WAS THE DISCLOSURE MADE? (MO/DA/YR)** |
| | **2. TO WHOM (NAME AND TITLE) WAS THE DISCLOSURE MADE?** |
| | **3. DISCLOSURE OF INFORMATION EVIDENCED *(check all that apply)*:**<br>( ) VIOLATION OF LAW, RULE, OR REGULATION<br>( ) GROSS MISMANAGEMENT<br>( ) GROSS WASTE OF FUNDS<br>( ) ABUSE OF AUTHORITY<br>( ) SUBSTANTIAL AND SPECIFIC DANGER TO PUBLIC HEALTH OR SAFETY<br>( ) NONE OF THE ABOVE |
| | **4. WHAT PERSONNEL ACTION(S) OCCURRED, FAILED TO OCCUR, OR WAS THREATENED BECAUSE OF THE DISCLOSURE?** |
| | **5. WHEN DID PERSONNEL ACTION(S) OR THREAT(S) OCCUR? (MO/DA/YR)** |

| D. WHAT INFORMATION WAS DISCLOSED? *(DESCRIBE NEXT WHISTLEBLOWER DISCLOSURE)*. | |
|---|---|
| | **1. WHEN WAS THE DISCLOSURE MADE? (MO/DA/YR)** |
| | **2. TO WHOM (NAME AND TITLE) WAS THE DISCLOSURE MADE?** |
| | **3. DISCLOSURE OF INFORMATION EVIDENCED *(check all that apply)*:**<br>( ) VIOLATION OF LAW, RULE, OR REGULATION<br>( ) GROSS MISMANAGEMENT<br>( ) GROSS WASTE OF FUNDS<br>( ) ABUSE OF AUTHORITY<br>( ) SUBSTANTIAL AND SPECIFIC DANGER TO PUBLIC HEALTH OR SAFETY<br>( ) NONE OF THE ABOVE |
| | **4. WHAT PERSONNEL ACTION(S) OCCURRED, FAILED TO OCCUR, OR WAS THREATENED BECAUSE OF THE DISCLOSURE?** *(List all applicable personnel action numbers from pages 4-5)*. |
| | **5. WHEN DID PERSONNEL ACTION(S) OR THREAT(S) OCCUR?** |

**MUST BE COMPLETED FOR ALL DISCLOSURES INCLUDED IN THIS COMPLAINT**

3. If you are **not** the person who actually made a disclosure described in boxes A, B, C, D above, please check below to specify the disclosure involved, and provide the name, address, and telephone number of the person who made the disclosure, if known. (*If space is needed to identify more than one person, use Continuation Sheet at page 12.*)

Disclosure:   A (   )          B (   )          C (   )          D (   )

Name:

Address:

Telephone number:   (      )                              Ext.

4. Explain why you believe that the personnel action(s) listed above occurred because of the disclosure(s) that you described. (*Be as specific as possible about any dates, locations, names, and positions of all persons mentioned in your explanation. In particular, identify actual and potential witnesses, giving work locations and telephone numbers, if known. Attach a copy of any documents that support your statements. Please provide, if possible, a copy of the notification of the agency's proposal and/or decision about the personnel action(s) covered by your complaint. If more space is needed, continue on page 12.*)

Following my bringing these matters to my superiors' attention, I have been demoted from my prior post as Regional Director for Latin America and the Caribbean, unfairly criticized  about my performance, subjected to an unwarranted investigation regarding my e-mail account, capriciously denied leave, and relegated to an undesirable office location not commensurate with my position, among other acts.   All of these actions have been taken despite my having done an excellent job in increasing my region's portfolio and also creating a prestigious and highly successful judicial capacity building program.  The latest act involves the failure to extend my term appointment, as status under which the majority of OPDAT's employees are under.  The excuse that my position can only be funded prospectively with "programmatic funds" is but a transparent continuation of this pattern of retaliation.

A full account of these retaliatory acts and supporting documents are attached on page 12.

5. What action would you like OSC to take in this matter (that is, what remedy are you asking for)?

I request that OSC investigate these allegations, that actions be taken for these retaliatory acts to cease and that my term appointment be extended until September 20, 2016, given my excellent performance of my duties.

## PART 3: CONSENT TO CERTAIN DISCLOSURES OF INFORMATION

OSC asks everyone who files a complaint alleging a possible prohibited personnel practice or other prohibited activity to select one of three Consent Statements shown below. *IF YOU DO NOT SELECT ONE OF THE THREE CONSENT STATEMENTS BELOW, OSC WILL ASSUME THAT YOU HAVE SELECTED CONSENT STATEMENT 1,* Please: (a) select and sign (or check, if filing electronically) one of the Consent Statements below; and (b) keep a copy of the Consent Statement you select (as well as a copy of all documents that you send to OSC) for your own records.

If you initially select a Consent Statement that restricts OSC's use of information, you may later select a less restrictive Consent Statement. If your selection of Consent Statement 2 or 3 prevents OSC from being able to conduct an investigation, an OSC representative will contact you, explain the circumstances, and provide you with an opportunity to select a less restrictive Consent Statement.

You should be aware that the Privacy Act allows information in OSC case files to be used or disclosed for certain purposes, regardless of which Consent Statement you sign. See 5 U.S.C. § 552a(b). Information about certain circumstances under which OSC can use or disclose information under the Privacy Act appears on the next page.

### *(Please sign one)*

### Consent Statement 1

I *consent* to OSC's communication with the agency involved in my complaint. I agree to allow OSC to disclose my identity as the complainant, and information from or about me, to the agency if OSC decides that such disclosure is needed to investigate the allegation(s) in my complaint (for example, to request information from the agency, or seek a possible resolution through mediation or corrective action). I understand that regardless of the Consent Statement I choose, OSC may disclose information from my complaint file when permitted by the Privacy Act (including circumstances summarized in Part 5, below).

Complainant's Signature for Consent Statement 1          Date Signed

### Consent Statement 2

I *consent* to OSC's communication with the agency involved in my complaint, but I do not agree to allow OSC to disclose my identity as the complainant to that agency. I agree to allow OSC to disclose only information from or about me, without disclosing my name or other identifying information, if OSC decides that such disclosure is needed to investigate the allegation(s) in my complaint (for example, to request information from the agency, or seek a possible resolution through mediation or corrective action). I understand that in some circumstances (for example, if I am complaining about my failure to receive a promotion), OSC could not maintain my anonymity while communicating with the agency involved about a specific personnel action. In such cases, I understand that this request for confidentiality might prevent OSC from taking further action on my complaint. I also understand that regardless of the Consent Statement I choose, OSC may disclose information from my complaint file when permitted by the Privacy Act (including circumstances summarized in Part 5, below).

Complainant's Signature for Consent Statement 2          Date Signed

### Consent Statement 3

I *do not consent* to OSC's communication with the agency involved in my complaint. I understand that if OSC decides that it cannot investigate the allegation(s) in my complaint without communicating with that agency, my lack of consent will probably prevent OSC from taking further action on the complaint. I understand that regardless of the Consent Statement I choose, OSC may disclose information from my complaint file when permitted by the Privacy Act (including circumstances summarized in Part 5, below).

Complainant's Signature for Consent Statement 3          Date Signed

## PART 4: CERTIFICATION AND SIGNATURE

**I certify that all of the statements made in this complaint (including any continuation pages) are true, complete, and correct to the best of my knowledge and belief. I understand that a false statement or concealment of a material fact is a criminal offense punishable by a fine of up to $250,000, imprisonment for up to five years, or both. 18 U.S.C. § 1001.**

Signature                                                        Date Signed

## PART 5: PRIVACY ACT / PAPERWORK REDUCTION ACT STATEMENTS

_Routine Uses_. Limited disclosure of information from OSC files is needed to fulfill OSC's investigative, prosecutorial, and related responsibilities. OSC has described 18 routine uses for information in its files in the _Federal Register_ (F.R.), at 66 F.R. 36611 (July 12, 2001), and 66 F.R. 51095 (October 5, 2001). A copy of the routine uses is available from OSC upon request. A summary of the routine uses appears below.
OSC may disclose information from its files in the following circumstances:

1. to disclose that an allegation of prohibited personnel practices or other prohibited activity has been filed;

2. to disclose information to the Office of Personnel Management (OPM) as needed for inquiries involving civil service laws, rules or regulations, or to obtain an advisory opinion;

3. to disclose information about allegations or complaints of discrimination to entities concerned with enforcement of antidiscrimination laws;

4. to the MSPB or the President, when seeking disciplinary action;

5. to the involved agency, MSPB, OPM, or the President when OSC has reason to believe that a prohibited personnel practice has occurred, exists, or is to be taken;

6. to disclose information to Congress in OSC's annual report;

7. to disclose information to third parties as needed to conduct an investigation; obtain an agency investigation and report on information disclosed to OSC's whistleblower disclosure channel; or to give notice of the status or outcome of an investigation;

8. to disclose information as needed to obtain information about hiring or retention of an employee; issuance of a security clearance; conduct of a security or suitability investigation; award of a contract; or issuance of a license, grant, or other benefit;

9. to the Office of Management and Budget (OMB) for certain legislative coordination and clearance purposes;

10. to provide information from an individual's record to a congressional office acting pursuant to the individual's request;

11. to furnish information to the National Archives and Records Administration for records management purposes;

12. to produce summary statistics and work force or other studies;

13. to provide information to the Department of Justice as needed for certain litigation purposes;

14. to provide information to courts or adjudicative bodies as needed for certain litigation purposes;

15. to disclose information to the MSPB as needed in special studies authorized by law;

16. for coordination with an agency's Office of Inspector General or comparable entity, to facilitate the coordination and conduct of investigations and review of allegations;

17. to news media or the public in certain circumstances (except when the Special Counsel determines that disclosure in a particular case would be an unwarranted invasion of personal privacy); and

18. to the Department of Labor and others as needed to implement the Uniformed Services Employment and Reemployment Rights Act of 1994, and the Veterans' Employment Opportunities Act of 1998.

If OSC officials believe that disclosure may be appropriate in a situation not covered by one of OSC's routine uses, or one of the 11 other exceptions to the Privacy Act's general prohibition on disclosure, OSC will seek written authorization from the complainant permitting the disclosure.

_Purposes, Burdens, and Other Information_. An agency may not conduct or sponsor a collection of information, and persons may not be required to respond to a collection of information, unless it: (a) has been approved by OMB, and (b) displays a currently valid OMB control number. The information in this form is collected pursuant to OSC's legal responsibility to investigate: (a) allegations of prohibited personnel practices, to the extent necessary to determine whether there are reasonable grounds to believe that a prohibited personnel practice has occurred, exists, or is to be taken (5 U.S.C. § 1214); and (b) other allegations of prohibited activity (5 U.S.C. § 1216). The information will be reviewed by OSC to determine whether the facts establish its jurisdiction over the subject of the complaint, and whether further investigation and corrective or disciplinary action is warranted. The reporting burden for this collection of information is estimated to be an average of one hour and 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering the data needed, and completing and reviewing the form. Please send any comments about this burden estimate, and suggestions for reducing the burden, to the Office of Special Counsel, Legal Counsel and Policy Division, 1730 M Street, N.W. (Suite 218), Washington, DC 20036-4505. Use of this form to file a complaint alleging a prohibited personnel practice or other prohibited activity is required; use of this to file a complaint alleging only a Hatch Act violation is not required. 5 C.F.R. § 1800.1(d), as amended. As stated in Part 3 of this form, complainants may request that OSC maintain their name, and information provided by them, in confidence.

## CONTINUATION SHEET

| Part No. | Item/Question No. | Response Continuation |
|---|---|---|
| | 12 | Paul Vaky, OPDAT/Regional Director for Central and Eastern Europe, career appointment |
| | 12 | Carl Alexandre, former Director/OPDAT, career SES |
| 2 | 4 | Please see Chronology of events and supporting documents attached |

**KEEP A COPY OF THIS PAGE FOR YOUR RECORDS IF YOU ARE ALLEGING
REPRISAL FOR WHISTLEBLOWING**

## PART 3: CONSENT TO CERTAIN DISCLOSURES OF INFORMATION

OSC asks everyone who files a complaint alleging a possible prohibited personnel practice or other prohibited activity to select one of three Consent Statements shown below. *IF YOU DO NOT SELECT ONE OF THE THREE CONSENT STATEMENTS BELOW, OSC WILL ASSUME THAT YOU HAVE SELECTED CONSENT STATEMENT 1.* Please: (a) select and sign (or check, if filing electronically) one of the Consent Statements below; and (b) keep a copy of the Consent Statement you select (as well as a copy of all documents that you send to OSC) for your own records.

If you initially select a Consent Statement that restricts OSC's use of information, you may later select a less restrictive Consent Statement. If your selection of Consent Statement 2 or 3 prevents OSC from being able to conduct an investigation, an OSC representative will contact you, explain the circumstances, and provide you with an opportunity to select a less restrictive Consent Statement.

You should be aware that the Privacy Act allows information in OSC case files to be used or disclosed for certain purposes, regardless of which Consent Statement you sign. See 5 U.S.C. § 552a(b). Information about certain circumstances under which OSC can use or disclose information under the Privacy Act appears on the next page.

### *(Please sign one)*

### Consent Statement 1

I *consent* to OSC's communication with the agency involved in my complaint. I agree to allow OSC to disclose my identity as the complainant, and information from or about me, to the agency if OSC decides that such disclosure is needed to investigate the allegation(s) in my complaint (for example, to request information from the agency, or seek a possible resolution through mediation or corrective action). I understand that regardless of the Consent Statement I choose, OSC may disclose information from my complaint file when permitted by the Privacy Act (including circumstances summarized in Part 5, below).

| | |
|---|---|
| Complainant's Signature for Consent Statement 1 | Date Signed |

### Consent Statement 2

I *consent* to OSC's communication with the agency involved in my complaint, but I do not agree to allow OSC to disclose *my identity as the complainant to that agency*. I agree to allow OSC to disclose only information from or about me, without disclosing my name or other identifying information, if OSC decides that such disclosure is needed to investigate the allegation(s) in my complaint (for example, to request information from the agency, or seek a possible resolution through mediation or corrective action). I understand that in some circumstances (for example, if I am complaining about my failure to receive a promotion), OSC could not maintain my anonymity while communicating with the agency involved about a specific personnel action. In such cases, I understand that this request for confidentiality might prevent OSC from taking further action on my complaint. I also understand that regardless of the Consent Statement I choose, OSC may disclose information from my complaint file when permitted by the Privacy Act (including circumstances summarized in Part 5, below).

| | |
|---|---|
| Complainant's Signature for Consent Statement 2 | Date Signed |
| *[signature]* | 7-2-14 |

### Consent Statement 3

I *do not* consent to OSC's communication with the agency involved in my complaint. I understand that if OSC decides that it cannot investigate the allegation(s) in my complaint without communicating with that agency, my lack of consent will probably prevent OSC from taking further action on the complaint. I understand that regardless of the Consent Statement I choose, OSC may disclose information from my complaint file when permitted by the Privacy Act (including circumstances summarized in Part 5, below).

| | |
|---|---|
| Complainant's Signature for Consent Statement 3 | Date Signed |

## PART 4: CERTIFICATION AND SIGNATURE

**I certify that all of the statements made in this complaint (including any continuation pages) are true, complete, and correct to the best of my knowledge and belief. I understand that a false statement or concealment of a material fact is a criminal offense punishable by a fine of up to $250,000, imprisonment for up to five years, or both. 18 U.S.C. § 1001.**

| | |
|---|---|
| _Signature_ | 7-2-14 |
| | Date Signed |

## PART 5: PRIVACY ACT / PAPERWORK REDUCTION ACT STATEMENTS

_Routine Uses_. Limited disclosure of information from OSC files is needed to fulfill OSC's investigative, prosecutorial, and related responsibilities. OSC has described 18 routine uses for information in its files in the _Federal Register_ (F.R.), at 66 F.R. 36611 (July 12, 2001), and 66 F.R. 51095 (October 5, 2001). A copy of the routine uses is available from OSC upon request. A summary of the routine uses appears below.

OSC may disclose informatio from its files in the following circumstances:

1. to disclose that an allegation of prohibited personnel practices or other prohibited activity has been filed;

2. to disclose information to the Office of Personnel Management (OPM) as needed for inquiries involving civil service laws, rules or regulations, or to obtain an advisory opinion;

3. to disclose information about allegations or complaints of discrimination to entities concerned with enforcement of antidiscrimination laws;

4. to the MSPB or the President, when seeking disciplinary action;

5. to the involved agency, MSPB, OPM, or the President when OSC has reason to believe that a prohibited personnel practice has occurred, exists, or is to be taken;

6. to disclose information to Congress in OSC's annual report;

7. to disclose information to third parties as needed to conduct an investigation; obtain an agency investigation and report on information disclosed to OSC's whistleblower disclosure channel; or to give notice of the status or outcome of an investigation;

8. to disclose information as needed to obtain information about hiring or retention of an employee; issuance of a security clearance; conduct of a security or suitability investigation; award of a contract; or issuance of a license, grant, or other benefit;

9. to the Office of Management and Budget (OMB) for certain legislative coordination and clearance purposes;

**Letter of Grievance Regarding Office of Overseas Prosecutorial Development
Assistance and Training's (OPDAT) Dismissal**

This constitutes my grievance regarding the notice I received on June 11, 2014,
advising me that my term as Regional Director for Judicial Studies will not be
renewed beyond its current expiration date of September 30, 2014.  Specifically, I
was advised of the following by my Director, Faye Ehrenstamm:

> As you know, unfortunately, we have yet to receive any programmatic
> money to support your position and I cannot continue to draw upon our
> overhead reserves – as I have during this fiscal year -- to support the JSI
> position into the next fiscal year.

> I appreciate your many contributions to OPDAT -- and we will continue to
> support JSI --- but given our overhead situation, I will not be able to extend your
> appointment beyond September 30th.

This adverse action is but the latest of a series of well documented retaliatory acts that
have been taken against me.  Beginning in the summer of 2012, I have repeatedly
complained, on behalf of other employees and myself of workplace gender and race
discrimination and sexual harassment.  During this same time period I have also
complained in good faith about the lack of financial accountability and misuse of
government funds in programs under my supervision.

As more fully described in the attached chronology, following my bringing these matters
to my superiors' attention, I have been demoted from my prior post as Regional Director
for Latin America and the Caribbean, unfairly criticized in my performance, subjected to
an unwarranted investigation regarding my e-mail account, capriciously denied leave, and
relegated to an undesirable office location not commensurate with my position, among
other acts.   All of these actions have been taken despite my having done an excellent job
in increasing my region's portfolio and also creating a prestigious and highly successful
judicial capacity building program.  The excuse that my position can only be funded
prospectively with "programmatic funds" is but a transparent continuation of this pattern
of retaliation.

Accordingly, I request that this retaliatory action against me be rescinded and that my
term be extended until September 30, 2016.  This would be the customary extension to
which I would be entitled based upon my excellent performance.

Virna L. Santos                                                    Dated: June 24, 2014

| From: | Ehrenstamm, Faye S. |
| To: | Santos, Virna L.; Alexandre, Carl |
| Cc: | Moberly, Suzanna |
| Subject: | Addendum Re: Virna"s Denied Leave Request and Time Sheet for PP 26 |
| Date: | Thursday, December 27, 2012 4:31:12 PM |

All: After I sent the below email, Suzie received a clarifying email from Crm Admin that our deadline for validating/ certifying without impacting timeliness of salary payment is January 2, not January 3. So, if I do not hear otherwise from Carl by January 2, we will validate/certrify timesheet with 3 days of AWOL.

Faye

**From**: Ehrenstamm, Faye S.
**Sent**: Thursday, December 27, 2012 03:52 PM Eastern Standard Time
**To**: Santos, Virna L.; Alexandre, Carl
**Cc**: Moberly, Suzanna
**Subject**: Virna's Denied Leave Request and Time Sheet for PP 26

Carl,

Virna (cc'd) has been in touch with Suzie about validating her time sheet for pay period 26  and has asked Suzie (cc'd) to include 3 days of annual leave for this week – those days would fall within the leave request that you denied and to my knowledge have not rescinded.

If the leave denial is not rescinded, that would put Virna in AWOL status.

Since time sheets need to be validated and certified by early next week, we have checked with Crim Admin on the impact of either validating this week as including leave or as including 3 days of AWOL.  Should the time sheet include leave, which is currently denied and remains denied, this can be corrected in later pay periods but would result in an overpayment for those 3 days that would be have to be returned to the government.  Should the time sheet reflect the 3 days as AWOL, there would be no payment for those 3 days.  However, should leave be retroactively granted, the time sheet can be corrected in a future pay period and the payment for those days added in a later pay period.

While time sheet validations/certifications for pay period 26 are due next Monday (December 31), we have received permission to submit Virna's time sheet by no later than January 3 in order to attempt to resolve this before final validation/certification.

Carl, please advise on how you would like us to proceed.

Carl and Virna, If I do not hear from Carl by January 3 that he has rescinded the leave denial, we will post the 3 days as AWOL and you can work directly with Carl  to address your request for reconsideration.

Last, Virna, I note that in your email below, you state that you did not closely read the email denying your leave request , that you assumed that it was an approval and that you do not

understand the reason for the denial.  While I do not have a copy of the actual email received by you, emails denying or approving leave are very clear as to status of requests.  When there is a denial, the denial will reflect the reason.  In this case, the reason for denial is indeed stated on your electronic leave request as "Denied because it was not timely presented to management. Employees were asked to update the holiday leave matrix for the office and the employee failed to inform us of this request until now."  This should  have been clear from the email  received by you; I am at a loss  to understand your confusion as to the reason for Carl's decision.

Faye

---

**From:** Ehrenstamm, Faye S.
**Sent:** Wednesday, December 26, 2012 1:21 PM
**To:** Santos, Virna L.; Alexandre, Carl
**Subject:** RE: Your Whereabouts This Week

Carl,

I defer to you on how to proceed.

Faye

---

**From:** Santos, Virna L.
**Sent:** Wednesday, December 26, 2012 1:19 PM
**To:** Ehrenstamm, Faye S.
**Cc:** Alexandre, Carl
**Subject:** Re: Your Whereabouts This Week

I saw an e-mail but did not read it closely because I assume it was an approval. Accordingly, I went on with my plans and left the out of office notice. I certainly hope this can be rectified as I ensured there was coverage for my section and I am monitoring the e-mail, obviously.

It is my father's 84th birthday and I planned to spend it with my family. The earliest I can be back is on 12/31.

Carl,

I do not know the reason of your denial of my leave request. In light of the above, I request that it be approved.

Thank you.

---

**From**: Ehrenstamm, Faye S.
**Sent**: Wednesday, December 26, 2012 11:50 AM Eastern Standard Time
**To**: Santos, Virna L.
**Cc**: Alexandre, Carl
**Subject**: Your Whereabouts This Week

Virna,

I just received the below out of office message from you.

As you recall from the emails we had last Friday on your timesheet, I reminded you that Carl has denied your leave request for this week.

As far as I know, that denial was not reversed.  Accordingly, you should be in the office this week and not on leave, otherwise you are in AWOL status.

Please advise if Carl (cc'd) rescinded the denial or if you are in the office.

Thank you, Faye

---

**From:** Santos, Virna L.
**Sent:** Wednesday, December 26, 2012 11:46 AM
**To:** Ehrenstamm, Faye S.
**Subject:** Automatic reply: Mexico travel for Edna Rosario-Munoz on January 13, 2013

I will be away from the office from December 24, 2012 until January 2, 2013. If you need immediate assistance, please contact Ronald Williams at (202) 616-4399 or Ronald.Williams5@usdoj.gov. Thank you.

**List of Exhibits**

Exhibit 1- Electronic mail message dated October 2012 regarding request that my claim that I had not received e-mail relating to Colombia USAID consultations.

Exhibit 2- Electronic mail messages relating to denial of holiday leave

Exhibit 2a- Electronic mail message showing leave had been timely requested

Exhibit 3- Electronic mail message from Director Faye Ehrenstamm re: lack of grant authority

Exhibit 3a-Electronic mail exchange with Andrew Lyons regarding Barranquilla BACRIM fund cite

Exhibit 4- Electronic message from Andrew Lyons informing that Virna Santos could not participate in discussions about Colombia grant.

Exhibit 4a-memo from Nicholas Cooper conveying State Department's reaction to unauthorized transfer of funds

Exhibit 5- Memo to file re: conversations with Administrative Officer Laurel Glenn re: request to prepare negative report

From:      Alexandre, Carl
Sent:      Tuesday, October 23, 2012 6:40 PM
To:        Santos, Virna L.
Cc:        Ehrenstamm, Faye S.
Subject: RE: USAID annual meeting with NGOs
Attachments:    Re: USAID annual meeting with NGOs

Importance:      High


Virna, I have been looking into your assertion that you were never informed
about this invitation. The below email dated Sunday, October 14, on this
subject was sent by Paul to your DOJ account. I was about to call Paul to
criticize him for not coordinating with you, but fortunately for me, I forwarded your email to Faye since you once again failed to copy her on an
important office related matter.  Only through Faye who was copied on Paul's
original email did I learn that Paul emailed you during the weekend about his
unavailability. Needless to say I am very concerned when I am unable rely on
the representations made to me by any employee, but it is particularly troubling when I can't rely on representations made to me by a Regional
Director. Please help me understand what is going on here.  Based on what I
know, the facts are inconsistent with your claim that you were not informed.
Carl

-----Original Message-----
From: Santos, Virna L.
Sent: Tuesday, October 16, 2012 9:54 AM
To: Alexandre, Carl; Ehrenstamm, Faye S.
Subject: Re: USAID annual meeting with NGOs

I just searched my e-mail and could not find said message on my BB. (I was on
travel on Sunday.) However, the important fact is that we did not coordinate
on this matter.



----- Original Message -----
From: Alexandre, Carl
Sent: Tuesday, October 16, 2012 09:48 AM

To: Ehrenstamm, Faye S.; Santos, Virna L.
Subject: Re: USAID annual meeting with NGOs

Virna, please explain your statement that you were not informed of this
meeting in light of the email Paul sent to you and others on Sunday.


----- Original Message -----
From: Ehrenstamm, Faye S.
Sent: Tuesday, October 16, 2012 09:37 AM
To: Alexandre, Carl; Santos, Virna L.
Subject: FW: USAID annual meeting with NGOs

Email below sent by Paul on Sunday to Virna, with copies to Nick and me.

-----Original Message-----
From: Vaky, Paul [mailto:VakyP@state.gov]
Sent: Sunday, October 14, 2012 3:37 PM
To: Santos, Virna L.
Cc: Cooper, Nicklous T; Ehrenstamm, Faye S.
Subject: USAID annual meeting with NGOs

Virna, USAID is holding their annual meeting with NGOs in Washington this
coming Friday the 19th. Donn Chisholm had asked if I would go.  I told him the
Brownfield visit would complicate my participation.   My suggestion has been
to excuse our participation indicating we are open to a meeting at another
time and willing to respond to written inquiries – similar to what we did a
few years back as you will recall. The other alternative is for you to present
if you want. We could prepare a presentation for you.


I have informed Don that I would ask you but that I was not sure that was
likely.   Please let me know if you want to participate. If not that is fine
we can manage this as we have done in the past

| | |
|---|---|
| **From:** | Santos, Virna L. |
| **To:** | "Kevin Little" |
| **Subject:** | FW: Holiday leave |
| **Date:** | Wednesday, January 02, 2013 5:36:00 PM |
| **Attachments:** | Re Virna"s Denied Leave Request and Time Sheet for PP 26.msg |
| | Virna"s Denied Leave Request and Time Sheet for PP 26.msg |
| | Your Whereabouts This Week.msg |
| | Addendum Re Virna"s Denied Leave Request and Time Sheet for PP 26.msg |
| | Re Addendum Re Virna"s Denied Leave Request and Time Sheet for PP 26.msg |

Carl and Faye:

Below please find an e-mail in which I informed Ms. Moberly of my leave plans.  It took me two hours to locate this old e-mail.  I only did so in response to your repeated claims that I have violated rules without giving me an opportunity to even weigh in on the matter.  I again request that in the future, before jumping to conclusions, I am given an opportunity to at least give my perspective.  You had the opportunity to alert me to the fact that you intended to deny my leave request, based on an erroneous assumption.  This could have saved me a lot of time and aggravation.

I hope this puts an end to this incident and that we can move on to do our important work.


Virna L. Santos
Regional Director for Latin America and the Caribbean
Phone: (202) 353-3616
Mobile: (202) 445-5292
Virna.Santos@usdoj.gov


---

**From:** Santos, Virna L.
**Sent:** Monday, November 05, 2012 4:10 PM
**To:** Moberly, Suzanna
**Subject:** Holiday leave

These are my holiday leave plans:

11/23
12/26-1/2

Thank you.

Virna L. Santos
Regional Director for Latin America and the Caribbean
Overseas Prosecutorial Development, Assistance and Training (OPDAT)
U.S. Department of Justice
1331 F Street N.W., Suite 400
Washington, D.C. 20004-1107
Phone: (202) 353-3616
Mobile: (202) 445-5292
Fax: (202) 616-6770

Virna.Santos@usdoj.gov

| | |
|---|---|
| **From:** | Ehrenstamm, Faye S. |
| **To:** | Nikolic, Borko (Belgrade); Rajkovic, Branislava (Belgrade); Ainsworth, Peter; Alexander, Glenn; Benedetto, James; Bonhomme, Vanessa; Butler, Mary; Carlberg, Russell; Cobar, Marlon; Coleman, Major; Connors, John; Dawson, Justin; De La Torre, Stacy; Dembosky, Luke; Eldridge, Cynthia; Engstrom, John; Gabel, Louis; Golden, Jay; Grad, Mary; Hill, Tanya; Holmes, Rene; Jenkins, Charles (USATXW); Kessler, Steven; Kimball, Jared; Kinney, Terry; Kohl, Ken (USADC); Kwapinski, Modest; Lakomy, Michelle; Latimer, Kyle; Lewis, David; Lulejian, John; Mercado-Rios, Jeanette; Molek, Theresa; Morgan, Brain; Neff, Steven; Peterson, Erik; Plagenhoef, Ruth; Rao, Vasantha; Smibert, Jon; Strang, Robert; Strasser, Peter; Taylor, Robin; Thomson, Robert; Thornton, Brenda Sue; Tirol, AnnaLou; Tomney, Brian (ODAG) (JMD); Vaccaro, Michael; Vaky, Paul; Warren, Jimmye; Woelfle, Marty; Yera, E.J. (USAFLS); Zolot, Kevin; Akdogan, Nilgun; Alisgandarov, Sabir; Avtutova, Liudmila; Baeza, Marisol; Bilal, Tahir; Budiningsih, Ade; Cayetuna, Sarah; Fedorchuk, Nazar; Fernandes, Ambrosio; Foltea, Radu; Haque, Shahedul; Ivanchenko, Olga; Janiceski, Filip; Jolic, Jelena; Kadhem, Hala; Khachaturyan, Davit; Khan, Saba; Kusari, Benina; Marina Moran Centeno, Berta; Niang, Douda; Panchan, Mingkwan; Pataraia, Tatiana; Shafik, Miriam; Slinic, Elma; Soto, Guillermo; Spaseva, Vercia; Trepikhalin, Alexei; Tsnoriashvili, Nata; Yemeliova, Anna; Yue, Dong; Yunita, Cut; Ainsworth, Peter; Bowman, Robert; Crawford, Michele; Dorwin, Thomas; Huber, George; Kerney, Andria; Lee, Amy Chang; Lehmann, Christopher; Lipman, Robert; Michele Crawford (Michele_Crawford@ao.uscourts.gov); Newcombe, Catherine; Peebles, Thomas; Rosario-Munoz, Edna; Santos, Virna L.; Truebell, Beth; Woelfle, Marty; Baker, Caleb; Castaneda, Carlocesar; Clyne, Emily; Collins, Charles; Devine, Sarah; Fagon, Damian; Hollis, Jessica; Hsieh, Sonya; Kelly, Kyle; Parsons, Sara; Paul, Sarah; Piehl, Benjamin; Rasmussen, Mary; Van Fossen, Christine; Williams, Ronald; Barnette, Michael; Glenn, Laurel; Mclean, Laynetta; Moberly, Suzanna; Sudler, Delia; Andersson, Stephen; Chema, Richard; Ex, Charles; Muncy, Sherry; Wynne, Larry |
| **Cc:** | Lyons, Andrew; Segrest, Andrew; Brown, Lolita |
| **Subject:** | Important Policy Notice on Grants and Procurements |
| **Date:** | Thursday, June 13, 2013 8:07:22 PM |
| **Importance:** | High |

All,

Recently the subject of grant making to foreign governments arose here at HQ.

Please be advised that no OPDAT staff member, whether at HQ or overseas, can sign off on grant authorizations.  Indeed, as I know you all are aware, OPDAT staffers – with the exception of myself, Chris and Tom D (and there are limitations on us!) --- cannot authorize or make any financial obligations, including equipment purchases, vendor contracts, supplies, leases and so forth.  While you can initiate purchase requests, the request must go through the proper procurement and/or grants procedures.

Below is specific guidance from Andrew Lyons of ITFM:

> Effective immediately, please be aware that DOJ OPDAT staff may not authorize grants to foreign governments using foreign assistance funds.  This includes both monetary and equipment grants.  All such transfers must be authorized by an appropriate State Department official (generally a warranted grant official).  This applies even if you are managing an IAA whose approved budget includes a grant to a foreign government.  In such cases, communicate with HQ so that we can help you liaise with State to ensure proper procedures are followed.
>
> This policy guidance from State/INL supersedes previous guidance – for example, in one post there has been a longstanding memorandum that permitted DOJ to use INL's

authorities through the LOA to provide host government advances.  That memo and any similar past policies or procedures are now null and void.

More generally, please bear in mind that RLAs are not financial management officers and thus not authorized to incur financial obligations on behalf of the U.S. government.  You can initiate purchase requests, sign to verify receipt of goods or services and perform similar functions related to financial transactions, but the transactions themselves must be authorized by the FMO.  With that in mind, please make sure any document you are asked to sign does not represent you as an approving budget official.

It is imperative to follow this guidance – otherwise we will have unauthorized expenditures for which the signatory may be liable, among other potential consequences.

Thanks in advance for your attention to this.

If you have any questions, please let me or Andrew (cc'd) know.

Faye

| | |
|---|---|
| **From:** | Lyons, Andrew |
| **To:** | Santos, Virna L. |
| **Cc:** | Fagon, Damian; Williams, Ronald; Ehrenstamm, Faye S.; Lehmann, Christopher |
| **Subject:** | RE: Barranquilla BACRIM fund cite issue |
| **Date:** | Tuesday, June 25, 2013 12:17:03 PM |

Virna,

Very many thanks for this information.

Regards,
Andrew

Andrew Lyons | U.S. Department of Justice | Criminal Division | Office of Administration | Principal
Deputy Director, International Training Financial Management  |   (202) 616-4365


-----Original Message-----
From: Santos, Virna L.
Sent: Tuesday, June 25, 2013 11:42 AM
To: Lyons, Andrew
Cc: Fagon, Damian; Williams, Ronald; Ehrenstamm, Faye S.; Lehmann, Christopher
Subject: Barranquilla BACRIM fund cite issue

Andrew,

In preparation for any meetings with JSRP Colombia Program Manager Paul Vaky regarding the
Barranquilla BACRIM fund cite matter, I wanted you to be aware of the information we had when these
funds were requested.  PA Fagon has reviewed his correspondence with Paul on this matter, including
an e-maill dated April 17, 2013 in which Paul states the urgent need for a fund cite for Fiscalia to
complete an office refurbishing project in Barranquilla.  However, the fund cite request that was
ultimately submitted was for technical assistance, computer equipment and software.  There was no
request for funds to remodel the BACRIM office nor to make a cash grant.  As we have discussed, the
fact that a cash grant was given to the Fiscalia in late May was first brought to our attention by State
Department officials. As we also discussed, the most salient fact for me is the lack of notice before and
after the grant was made despite the amount of publicity this grant giving ceremony received in
country.

Please do not hesitate to contact me with any questions you may have about this matter.

Thank you.

| | |
|---|---|
| **From:** | Lyons, Andrew |
| **To:** | Santos, Virna L. |
| **Subject:** | RE: Colombia |
| **Date:** | Tuesday, June 25, 2013 12:24:34 PM |

Virna,

Post sent me a packet of explanatory emails, which I have passed to Chris.  Apologies, but I have been asked by your leadership not to circulate further within OPDAT until they have reviewed - so I need to refer you to Chris.

Similarly on the meeting.  I have a 4pm tomorrow with Paul and Faye; it is probably the same one you are referring to below.  I have spoken with Paul on the phone but do not have any other meetings scheduled with him.

Regards,
Andrew

-----Original Message-----
From: Santos, Virna L.
Sent: Tuesday, June 25, 2013 2:22 AM
To: Lyons, Andrew
Subject: Colombia

Could you please send me any explanatory e-mails you may have received from post relating to the Fiscalia grant?

Also, are you meeting with Paul regarding this matter?  If so, may I participate by phone?  I requested to participate in tomorrow's meeting between Faye, Chris and Paul but was told it was limited to those parties only.

Thank you.

| | |
|---|---|
| **From:** | Ehrenstamm, Faye S. |
| **To:** | Cooper, Nicklous T; Lyons, Andrew; VakyP@state.gov; Lehmann, Christopher |
| **Cc:** | Santos, Virna L.; Yasofsky, Michael E |
| **Subject:** | RE: Procurement costs |
| **Date:** | Thursday, June 27, 2013 9:42:12 AM |

Thanks Nick – That does clear it up.  Faye

**From:** Cooper, Nicklous T [mailto:CooperNT@state.gov]
**Sent:** Thursday, June 27, 2013 9:40 AM
**To:** Lyons, Andrew; Ehrenstamm, Faye S.; VakyP@state.gov; Lehmann, Christopher
**Cc:** Santos, Virna L.; Yasofsky, Michael E
**Subject:** RE: Procurement costs

For my part, Story told me this yesterday during our meeting.

Story was talking about the recent donation to the Fiscalia for the BACRIM project and said that he and Walsh were opposed to donations of that type and that the way it was handled was not acceptably through INL channels.  He commented that the donation action was on Facebook and some comments there were very critical.  He advised DOJ has no grant authority.  That was the springboard into INL approvals and his mention of the $25K approval level.  Then he said such approval could be handled at Post.  He finally said we should consider procurements through NAS but he was not committal on that at this time.

I am not aware of the existence of any memo or written proposal related to local INL approval of procurements exceeding $25K.

Nicklous T. Cooper
Contractor-Operations Manager
US Department of Justice
American Embassy
Bogota, Colombia

Local Dial:   275-2269
U.S. Dial:    011 571 275-2269

Cell:  011 57 320 498-4330

-----Original Message-----
From: Lyons, Andrew [mailto:Andrew.Lyons@usdoj.gov]
Sent: Thursday, June 27, 2013 8:08 AM
To: Ehrenstamm, Faye S.; Vaky, Paul; Lehmann, Christopher
Cc: Santos, Virna L.; Cooper, Nicklous T
Subject: RE: Procurement costs

Faye, Paul and all,

I am confused by Faye's and Paul's references to Jimmy Story talking about procurements going through NAS.  Have I missed a memo?

Andrew

-----Original Message-----
From: Ehrenstamm, Faye S.
Sent: Thursday, June 27, 2013 8:59 AM
To: Lyons, Andrew; 'VakyP@state.gov'; Lehmann, Christopher
Cc: Santos, Virna L.; 'CooperNT@state.gov'
Subject: RE: Procurement costs

Andrew,

I am concerned that the NAS seems to feel that the $25,000 concept is actually in effect as a new policy.  As we discussed yesterday, this is a concept that is on the table, about which we are supposed to see a draft.

I would like to discuss this with Jim Walsh.

Perhaps you and I can call him today?

Faye

-----Original Message-----
From: Lyons, Andrew
Sent: Thursday, June 27, 2013 8:51 AM
To: 'VakyP@state.gov'; 'CooperNT@state.gov'
Cc: Ehrenstamm, Faye S.; Santos, Virna L.
Subject: Re: Procurement costs

I think that's the crux of what we need.  Nick, grateful you pull it together ASAP, since we would like to use the data to influence a new INL policy on our procurement that is currently being written.

Regards,
Andrew

----- Original Message -----
From: Vaky, Paul [mailto:VakyP@state.gov]
Sent: Thursday, June 27, 2013 08:32 AM Eastern Standard Time
To: Cooper, Nicklous T <CooperNT@state.gov>
Cc: Lyons, Andrew; Ehrenstamm, Faye S.; Santos, Virna L.
Subject: Procurement costs

Nick given Story's raising all procurements above $25,000 going thru NAS, can you coordinate data from all three entities (OPDAT, ICITAP and USMS) with respect to:
- how many procurements over $25,000 do we have monthly? Yearly?
- what are our admin/ICASS cost with respect to these procurements?

Andrew what else?


This email is UNCLASSIFIED.

Memorandum re: Meeting with Laurel Glenn, Administrative Officer, OPDAT

November 8, 2012 at approximately 11:30 a.m. in my office


Laurel came to convey messages from Carl that he was upset that I was not receiving his notes attached to documents that needed to be revised.  I explained to Laurel that the task order in questions had been revised in accordance to a previous instruction to clarify whether the Adecco task order was new or modified and that the change was made.  As to the second revision, neither Ron nor I had seen it.  I informed Laurel that I would make sure Ron knew to show me any notes in the future.

I mentioned to Laurel that I was aware of the predatory scrutiny my work was undergoing and that this note issue was another instance of the same treatment.  Laurel then said that now that I had said that, she was glad and she had something to tell me.  She closed the door to my office.

She told me that early upon her tenure at OPDAT this summer, she was asked by Deputy Director Faye Ehrenstamm to print out e-mail corresponded relating to the requests for my submission of the performance evaluations I had to complete for the people I supervised.  The e-mail reflected my updates on when I would have the evaluations ready.  As I completed the evaluations, I would turn them over to Laurel who would then forward to Faye.  Laurel told me that she was directed to print out these e-mails and prepare an e-mail to showing that I was negligent in my duties relating to this administrative responsibility.  Faye instructed not to discuss this request on any e-mail and to only discuss it personally. Laurel told me that she was new on the job and she wanted to please her supervisors.  She followed the instructions and wrote a memo setting the facts reflected on the e-mails: her requests and my responses.  She wrote an e-mail that she described as a factual chronology of the events with no characterization.  She told me that recently, Faye had returned the memo and the supporting documents stating that it was not good enough and that she had to explicitly say that I had been negligent in my duties.  Laurel told me that she did not intend to revise the memo.  She stated that she did not want to be used in that way and that she was embarrassed that she had agreed the memo in the first place.  She asked me not to divulge this information.

I thanked Laurel for telling me this and apologized to her because she was in the middle of this.

# Exhibit 8

**U.S. Department of Justice**

Justice Management Division

*Equal Employment Opportunity Staff*

---

*Washington, D.C. 20530*

**Sent via Certified Mail # 7005 3110 0000 3798 1472**

Kevin Little, Esq.
P.O. Box 8656
Fresno, California  93747

AUG  -5 2014

## NOTICE OF FINAL INTERVIEW AND
## RIGHT TO FILE A FORMAL COMPLAINT

Dear Mr. Little:

This will serve as notice that on August 5, 2014, via email, a final counseling interview was conducted.  Your client initially contacted the Department of Justice, Justice Management Division (JMD), Equal Employment Opportunity Staff, for assistance on June 30, 2014.  During her July 9, 2014, interview with the EEO Counselor, she alleged that management created an ongoing hostile work environment based on sex (female), sexual harassment and reprisal after:

1. She reported that U.S. Attorney Kevin Sundwall sexually harassed 3 female U.S Attorneys;
2. She reported that she was sexually harassed by U.S. Attorney Paul Vaky;
3. In December 2013, she was demoted because her report reached the front office;
4. On June 24, 2014, she was informed that her term appointment will not be renewed, despite having been renewed 3 times in the past.

If your client believes that she has been discriminated against on the basis of race, color, religion, sex, age, national origin, or physical or mental disability, genetic information, parental status, sexual orientation, gender identity and/or reprisal for participating in protected EEO activity, your client has the right to file a formal complaint **within 15 calendar days after your receipt of this notice**.  If your client files a formal complaint **after 15 calendar days** from the date of your receipt of this notice, your client's complaint may be dismissed as untimely.  **A Formal Complaint of Discrimination form is enclosed.  You can access the Form 201A at the following website www.usdoj.gov/jmd/eeos.  Once in the site in the left column click on EEO Complaint Processing, then click on Complaints Processing and download the form to your system.**

If your client files a Formal Complaint of Discrimination, it must be filed in person or by mail to the following official who is authorized to receive employment discrimination complaints:

**Richard Toscano**
**Director**
**Equal Employment Opportunity (EEO) Staff**
**Justice Management Division**
**2CON 145 N. Street N.E. Suite 1W.801**
**Washington, D.C. 20530**
**(202) 616-4800**

The formal complaint must be specific and contain only those issues either specifically discussed with the counselor or issues that are "like or related to" the issues that your client discussed with the counselor.  It must also state whether your client has filed a grievance under a negotiated grievance procedure **or** an appeal to the Merit Systems Protection Board on the same claims.  If your client adds issues on which she has not been counseled, these issues will be returned to your client for further counseling.

Once the EEO Staff receives your client's formal complaint, you and/or your client will receive a written acknowledgment of her formal complaint.

If you have any questions, please contact me at (202) 616-4817.

Sincerely,

Leisa Bush-Yillah
EEO Specialist/ADR Mgr.
Justice Management Division

**Acknowledgment of Receipt:**

☐    I hereby acknowledge that on _____ 2011, the EEO Counselor/Official has issued me my Notice of Final Interview and Right to File a Formal Complaint, including the Formal Complaint of Discrimination Form (Form 201A).


_____      _____

**Signature of Aggrieved Person (AP)**              **Date**

# Exhibit 9

## TRANSCRIPT OF INTIAL CONFERENCE CALL INTERVIEW WITH EEO COUNSELOR L. BUSH-YILLAH

>> Lisa Bush Hila.
[BLANKAUDIO]

>> Hello, good morning.

>> Good morning.

>> Good morning.

>> Fine thank you. Let me just close my door so I can put you on speaker phone, okay? Hold on. Okay, my name is Lisa Bushala I am the ER specialist servicing your complaint Ms.Santos how are you this morning?

>> I am fine thank you.

>> Good, good. I was unable to open up, something is going on with my computer a lot of these computers in JB in the last two days. So I will open up the attachment.

>> Mm-hm.

>> Let me explain the, I'll explain to you the process.
But first I'd like you to tell me what's going on. You say that you are intimidated based on your sexual harassment. Reprisal [INAUDIBLE] being a female. Can you give me

>> Yeah.

>> Can you give me a summary of what's going on?

>> Well, I began working in Washington D.C. Three and a half years ago.
My role was as a supervisor of multiple programs, and I'm going to focus on two in particular, which are the basis for my claim. Part of my job is to create programs to assist other countries. And I supervise attorneys who are stationed in U.S. Embassies throughout Latin America.
In the, inthe process of doing my job, I received complaints from three different women who worked in the Mexico program. They are attorneys usually they're experienced, well they are all experienced prosecutors while working there to assist those governments and execute the programs that we'd assign.

>> And they are U.S.

>> Those [INAUDIBLE]

>> Are they U.S. Citizens as well. They're all assistant US attorneys.

>> Okay.

>> Prosecutors.

>> Thank you.

>> And [NOISE] I, you know ,within I don't know a few months of my arrival I received my first compliant from an assistant US attorney who was detailed down there complaining that that her supervisor who was also an assistant US attorney down there details to that embassy was basically creating and hostile work environment, causing her not to be able to do her job berating her in front of others.
And just being improper in the way that, that she felt she was being singled out for being a woman. And being disparaged for being a woman. > >Okay.

>> After that, she finished her detail. We put in two new people. Two new trainees and then those people with months of being assigned started to hold similar complaints.
Very similar complaints, to the ones I received from the first. I the whole resident legal advisor, so even though their [INAUDIBLE] on details there were similar advice from there, at the end of each. So they started also complaining? I relate all those complaints to my supervisor. And that is the first basis to my complaint that after my having relate that and be encouraged to download the information.
I will actually tell you to [INAUDIBLE] for bringing that to my supervisor, for bringing that to our other immediate supervisor who is assistant, who is deputy assistant attorney general for Ford.
When I relayed that information to him, I was retaliated against through a series of retaliatory acts that I have set forth, in my, attached in my complaint, and I'd be happy to go through it.
So that's my first thing, and so I, I believe in good faith, that in my section. There this pictures of women [UNKNOWN] that is condones and when people complain about it then they are retaliated against in the same way, and so I is the first basis of my complaint.
The second basis for my complaint under the DEO commission is that I supervise an attorney in Columbia. So, basically, did not follow the chain of command, that that, those actions were encouraged by my management. Despite my request that I be, you know, included into this session and in one of my visits to Colombia.
I went to ask that attorney you know, questions, he touched me inappropriately in the middle of the court room, in the middle of proceedings and the reason why I leaned down to talk to him in a quiet voice and not interrupt the proceedings. He touched me in my lower back in a manner that was inappropriate in a manner that was witnessed by one of my employee.
And I complained about it. Nothing happened about it though. So that's the second basis for my complaint. The third basis for my complaint which I realize is not within the [UNKNOWN]. Of, of the EEO commission but it is related to all these recovery acts so for completeness I will state it.
I noted and denounced an incident of this management up front. And I was retaliated against you know, as part of this whole flurry of retaliatory acts. So those are the basis for my complains. And I'm happy to, to discuss, you know, in more context. Any questions you may have.

>> Okay. I do have a question. With regard to the [UNKNOWN] attorney that reported to you that they were being sexually harassed. Was it against one person, same person?

>> It was three people, no sexual well, I'm sorry, they come at it again from the basis of gender and so they said we'll also work environments in Mexico.
And the program that, that is basically under our jurisdiction because anything that happens in our

embassies is you know, is US territory. So there were three people who complained. Santos went from the records, complaint.

>> And they complain about the same person?

>> Yes.

>> Okay. And what's that person's name?

>> The persons name is Kevin Sundwall, S-U-N-D-W-A-L-L.

>> Can you repeat it again, S-U what?

>> S-U-N as in Nancy-D as in dog W-A as in apple L as in Larry-L as in Larry.

>> Sundwall.

>> Sundwall.

>> Mh-mm.

>> S-U-N-D-W-A-L-L?

>> Correct.

>> Okay. All right. And then, set to you the you, the person who touched you on your lower back, what's his name?
His name is Paul P-A-U-L Vaky V as in victor A as in apple K as in Key Y.

>> Okay, all right. Okay, let me explain the process. The EEO process I think based on the literature you received. [INAUDIBLE] initiate EEO contact within 45 calendar days of alleged discriminatory act.
What date was the, was the the touching of your lower back?

>> Well, I said 4th, in my supporting documents a whole series of acts. The most recent act which was the denial of the extension of my term appointment. [CROSSTALK].

>> The basis, the basis in my, in my in this complaint.
It happened on June 24th, 2014.

>> Okay, June 24th. And.

>> So, we're, we're, we, our assertion is, is that this is a continuing violation. That this is.

>> Right.

>> A [UNKNOWN] violation.

>> Okay, that's fine. And [UNKNOWN]. [COUGH].

>> Denail of okay. Denail [UNKNOWN] and you're basically saying this is an ongoing, hostile work

environment based on your protected basis is, you've already said sex reprisals, so forth, okay, that's fine.

We see denial of your term appointment. You mean like we they did, they did not renew, is that what you're saying.

>> There, and they informed me on June 24th, 2014, that I, as of September 30th, my term is ended, and I will not be renewed.

>> When you came on were you aware, I'm just asking a question, okay?

>> Mm-hm.

>> At the of appointment. Which is that term and, and they have the pleasure of, of [INAUDIBLE] whether they want to renew it or not. Is that correct? Were you aware of that?

>> I was aware and my term has been renewed three times.

>> Okay, okay.

>> Since I came on.

>> That's good to know, okay term renewed three times in the past.

>> Okay.

>> Correct.

>> Did they give you a reason as to why they didn't renew it this time?

>> My reasons are the ones that I stated, that theirs is the latest.
[CROSSTALK]

>> Did they give you a reason as to why?

>> The reason stated is in, is in the email that attached, they claim there are insufficient funds to support my position.

>> Okay. Again, so that I'm unable to get into that attachment.

>> That's fine, I can resend it.
You know, I can

>> Is it a lot that you can't fax it to me. Because I'm I'm having problems with my computer.

>> I, I can fax it to you. It would be over a 100, a 100 pages but I could fax it.

>> No, that's okay.
Let me see if I can, scan, scan an email to me again or just email to me.

>> Yes, but.

>> And I'll try to use this computer just to download it, okay?

>> Yeah we can break it up, maybe in separate emails.

>> Okay, that's fine.

>> So take us some time to just adjust because there's more than one, for [UNKNOWN], that file on sometimes our computers have difficulty opening those.

>> Okay, all right. As I said you have [UNKNOWN] to kind of calendar date to let us know how you're going to react. You have to engage in formal counseling which is what we're doing today.

>> Mm-hm.

>> Basically you have 30 days to engage in a formal counseling unless we extend that counseling period for another 60 days and we usually do that when we are trying to resolve cases or there are some extraordinary circumstances going on.
If it can not be resolved, then I will conduct a final interview with you and your, your attorney and then I will issue you a note to right to file a formal complaint. When you get that letter in the mail you have 15 calendar days to file a form complaint.
At that point when you file form a complaint we will, we will first acknowledge that complaint and send you a letter to that effect. And then we will either accept your complaint, your formal complaint or deny it. If we accept it it goes through investigation. Regulations allow the agency to, to conduct a,a, to allow 180 days to investigate the case.
You know, and producing, before the vaccination on ROI. At that point, when you, when the ROI comes back and we, and we disseminate to, to you and your attorney and management, you then have 30 days to [UNKNOWN] the hearing or if, or have a FAD hearing, a Final Agency Decision.
Of course, it's like seven months down, excuse me, my throat. Of course that takes about seven months down the road, okay? But in the interim what we try to do int he first 30 days, 60 days, we try to resolve as completely as possible. What do you remember these?

>> Well, I, I, my remedy is, I want my appointment to be extended as [UNKNOWN] the past, in the past. That is, that, you know, and obviously time is of the essence to me. September 30th, right now is my ending.

>> Right. Okay.

>> Well, that, that gives us 60 days.

>> Okay that's fine. All right, okay let me redo the right. Does he have it handy? The employee rights and responsibilities form?

>> Yes.

>> Okay, explain to me the time frames which is already number one. You have the right to remain anonymous through the claims process which is kinda hard to do.
But you have that right. Of course number three pertains to you because you do have the right to representation through, throughout the complaint process that [UNKNOWN] you have an attorney. You have a right to privacy in the court of the provisions of the privacy act of 1974 5USC-552A.
[COUGH] You also have the right to information regarding the EEO alternative dispute resolution

program, that I sent you a brochure about, okay?

>> Mm-hm.

>> Number six does not pertain to you because you don't have, you're not you're not I don't think he, you're not a union you're an attorney so that doesn't scare me at all.

>> Right.

>> Number seven is exact requirements that an event that an issue is appealable to a marisystem protection board. Number eight I told you already that I I'll conduct a final interview and then send you a notes about the file. [INAUDIBLE] letter and then you have a day to file a form of complaint that's, that's of course if we get to that point.

>> Mm-hm.

>> Number nine doesn't pertain to you cuz you're not age as [INAUDIBLE] aces.

>> Mm-hm.

>> Okay number ten doesn't involve you cuz it involves equal pay act.

>> Mm-hm.

>> Number 11, you have the right to request a hearing before you'll see mister judge. An all mixed case after 180 days or after the completion of the investigation.
So in other words, lets say the investigation is going on.

>> Mm-hm.

>> And 180 days has passed already.

>> Mm-hm.

>> At 181st day, you have the right to request a hearing. You also have the right.

>> Okay.

>> You also have the right to go to federal district court okay?

>> Mm-hm.

>> Whichever comes first. Number 12 you have the right to an immediate final decision after an investigation by the agency. Number 13 [UNKNOWN] city now, after 180 county days you have the right to go to Federal district court. You just have to notify that you are going to court.
Right? Number 14, doesn't pertain to you. Number 15 doesn't pertain to you. Number 16 says the due to mitigate damages the [INAUDIBLE] earned in a month, that could be earned by an individual of reasonable diligence, deducted from. [COUGH].

>> Mm-hm.

>> Okay. Number 17 you have a duty to keep the agency informed of any current, you know, current address, mailing address.
Okay?

>> Mm-hm.

>> Number 18 oh, I've talked to you before about the terms of the informed consent period and issuing a final issuing you a notice to right to file a formal complaint. Number 19 that owns those claims brought to the attention of the constant during the constant stage.
Claim to like or similar, are like or relate to those that were raised at the time of a formal complaint. Of course, you can, once you file a formal complaint, you can, a menu complaint at any time of the project, in the process.

>> Mm-hm.

>> Only problem is, if we've already sent out user ROI and the formal investigation and you want to amend your, your complaint.
Then we would have to have you go through the process all over again because at that point the IRI [INAUDIBLE] has already been completed.

>> Right.

>> Okay. Number nine, number 20 the rejection of the offer of resolution may pursue into 29CFR1614109-c. It results in a limited returning of attorney fees and costs.
And finally that two mor more complaints filed by the same complaint must be consolidated after a public notice from the complainer. So you have to sign that page down there at the bottom and then the second page, the, the, last page also has or a fireman to decide as well.

>> Okay.

>> See that?

>> Yes.

>> Okay, also I sent you request to extend the counseling period. I think for I will suggest or ask you to sign that as well.

>> Hm.

>> And basically what I would need you to do, what we need to ask the place to do is give me a brief summary of maybe one or two paragraphs to summarize just basically what your allegations are even though I haven't, I took notes and so forth, but I always like to have it in, in, in from the standpoint of, of the plant.

>> Mm-hm.

>> I know that, I know that you, you're going to send me the, the, the, the attachments that, the, the attachments that I was not able to open. But I really need a brief paragraph as well. One or two paragraphs.

>> Okay. [CROSSTALK].

>> So you want, so you understood that signed employees write down their responsibilities, and I will my consult my attorney about the extension and then the, the paragraph.

>> Ms. Bush,

>> Just call me Lisa, it's fine.

>> [LAUGH] Okay Lisa, just some clear the understanding, the extension of the counselling period would be to facilitate a resolution at this stage.

>> Exactly.

>> Okay.

>> Also, it allows us time to, because when you sent me the allegations, re summary.
And I contact management, and again I'm not able to contact management until you sign the employee rights and responsibility form.

>> Okay.

>> That's regulation driven. But once I contact management any kind of response. We usually give them a week to respond unless there is some other circumstances going on.
In terms of someone's altercation or, or there's always something coming up. Let me just put it that way. That's how we do that. [CROSSTALK] But we try to resolve, what we usually try to use that time for, is to try to resolve the complaint. And. [CROSSTALK]
that's how that works.

>> And if Ms.Santos insists on a pursuing the mediation alternative the department has to act accordingly correct?

>> It's not a discretion we will accept her request of, I, I'll, was there a packet for my directive to sign off on or to review? And then it also is his decision as to whether the action is appropriate.

>> Okay. Very well.

>> Okay?

>> All right. [CROSSTALK].

>> I want to talk so, I'm sorry.

>> Hm? Go ahead. Sorry.

>> I just wanted also to let you know that miss Santos has submitted a complaint to the Office of Special Council.

>> Okay.

>> A, a whistle blower reprisal complaint.

>> Mm-hm.

>> That is pending processing. We received notice yesterday that additional information is. Acquired once they accept her complaint and if they decide to, to, to act on it, this becomes a mixed case correct?

>> I, I'm not sure, but I'll, I'll find out to be honest.

>> Okay. I don't, I don't want to give you false answer off the cuff.

>> No, and I appreciate that so, that's good.

>> We can look into that, that special consult okay?

>> She hasn't gone to the merit systems board yet, because, quite simply, she obviously hasn't yet separated from employment.
So they, my understanding is they don't yet have jurisdiction, so.

>> Right. Right, so, okay. September 30th is her end date. [SOUND] And, and my, my understanding is that you've been suspended three times is that correct, in the past?

>> Yep. Yep.

>> Three different times.

>> Mm-hm, Mm-hm.

>> Okay, and your title, your title exactly is what?

>> My new title is Regional Director of Judicial Studies.

>> Say it again.

>> Regional Director of Judicial Studies.

>> Okay.

>> Ms Sanders you might want to make clear that this is not just a complaint about termination and, and hostile environment.

>> I know.

>> You also were demoted, as well.

>> Yeah, exactly. Yes, because that's my, my original title. When, when I accepted the position. I was Regional Director for Land American in the Caribbean. That means that I designed and supervised all of the programs that we have throughout Latin America.
I controlled and oversaw, 10 to 12 attorneys and over 50 support staff. And those here in, in Washington and abroad. I also [UNKNOWN] oversaw a portfolio of 60 million. After my February 14th meeting, which is set forth in my chronology that you haven't been able to open, but you will soon.
Where I was told by my director that I had exposed our section, to the front office, for having complained about the situation in Mexico. I was told that I was going to have to accept a new title,

that they would find me a new position in the office.
But they were going to find somebody else to fill my spot, and in fact they have.

>> Okay.

>> So in December of you know, that process started in February and in December of 2013. I was officially changed title to do you know, what I'm doing now. Which basically curtailed my portfolio for less than 1 million.
One person in fact said that I had to share with somebody else. And a whole host of you know, other acts that have made my, my ability to do my job nearly impossible.

>> Okay, but initially you were hired as a Regional Director of Judicial what now?

>> No, my current title is

>> Regional Director.

>> What I told you. The original title.

>> Uh-huh.

>> And, then their responsibilities that I just, [CROSSTALK] tried.

>> They know.

>> That, that title was Regional Director of Latin America and the Caribbean.

>> Okay, Latin America. Okay. Got it.

>> [UNKNOWN] in our office, we have people who will oversee the program [UNKNOWN].
We have divided basically the globe into regions. And so my region had to do with Latin America and the Caribbean.

>> Okay. Okay, got it. Okay. [NOISE] Sound good. Are you have any other, any questions at all?

>> No.

>> No. Thank you so much.

>> Okay I am, now I will tell you that I am, will be out of the office from the 16th of July, through, August, 1st, August 4th, I think it is.

>> Mm-hm.

>> But, I'm available, but I will be checking my Blackberry, periodically.

>> Okay, great.

>> Okay.

>> [COUGH].

>> So, I'm gonna try to do as much as I can. And as soon as you give me the stuff I can send out the allegations to management, notify management.

>> Mm-hm.

>> We can get this ball rolling, okay?

>> Wonderful.

>> Very well. And we'll get you the signed forms back today and we'll re-email you the, the documents hopefully in a, in a more accessible format. Okay, and I have to apologize. I know but, I'm not the only one computers messing up.
I was told yesterday that a number of computers throughout JMB they're having problems with Dell that the desktops. So I dunno what's going on. Maybe it's the system itself? So, that file that I wasn't able to open the attachments up.

>> All right, I, th, that's understandable. We all, now that we're all so dependant on these computers, these things

>> Isn't it terrible?

>> Yeah.

>> Yeah, it's terrible.

>> Yeah.

>> Okay now I'm sorry that it's so early in the morning, I'm from California so I understand.

>> [LAUGH] Game. Yeah, I'm from Berkeley, so I understand.

>> [LAUGH] Oh, yeah, good good. [CROSSTALK]

>> How fantastic.

>> All right. Thank you [CROSSTALK]

>> Thank you very much.

>> Have a great morning. [CROSSTALK]

>> Thanks.

>> [SOUND]
[BLANKAUDIO]

# Exhibit 10

| | |
|---|---|
| Subject: | RE: RMO Response |
| From: | Bush-Yillah, Leisa (JMD) (Leisa.Bush-Yillah@usdoj.gov) |
| To: | kevinglittle@yahoo.com; |
| Date: | Friday, August 8, 2014 5:53 AM |

Thank you for the clarification.

From: Kevin Little [mailto:kevinglittle@yahoo.com]
Sent: Friday, August 08, 2014 12:50 AM
To: Bush-Yillah, Leisa (JMD)
Subject: Re: RMO Response

Dear Ms. Bush-Yillah:

I certainly did not intend by my prior message to question your capabilities. Nor do I ascribe any ill will to you. I hope you did not take offense.

I have reviewed the conference call transcript of our initial counseling session, and you did indeed express an initial perception that the Mexico employees had made sexual harassment claims, which is an understandable confusion in light of the sexual harassment nature of the allegations regarding some of Mr. Vaky's later conduct. However, my client described the Mexican consulate issues in detail as follows during our conference call:

> I received my first compliant from an Assistant US attorney who was detailed down there (in Mexico) complaining that that her supervisor, who was also an Assistant US attorney down there detailed to that embassy, was basically creating a hostile work environment, causing her not to be able to do her job and berating her in front of others and just being improper in the way that, that she felt she was being singled out for being a woman, and being disparaged for being a woman.

> ......

> After that, she finished her detail. We put in two new people, two new trainees. And then those people with months of being assigned started to have similar complaints.

I further note that my client's narrative addendum to her informal complaint is totally consistent with her conference call description.

The Department knows full well about these other claims and the bases for them, since multiple EEO gender discrimination complaints were filed by Mexican consulate personnel. Given this well known information, I can only describe the Department's refusal to acknowledge the existence of these issues in its response as willful ignorance.

In sum, it is my hope and expectation that my client's formal complaint will be construed in light of her words and her submissions, and not how

they were misconstrued by the Department. Based on your most recent response, I anticipate that my client will have the opportunity to clarify any uncertainty when we draft her formal complaint.

Sincerely,

Kevin G. Little
Attorney at Law

Physical Address:
1724 Broadway, Suite 2
Fresno, California 93721

Mail and Delivery Address:
Post Office Box 8656
Fresno, California 93747

Telephone: (559) 412-6050
Facsimile: (559) 420-0839
Skype: (559) 708-4750
Email: kevinglittle@yahoo.com
Website: http://www.kevinglittle.com

CONFIDENTIALITY NOTICE: This e-mail message is covered by the Electronic Communications Privacy Act, 18 U.S.C. § 2510-2521. It is legally privileged. This information is intended only for use by the addressee. If you are not the intended recipient, you are hereby notified that any review, disclosure, copying, distribution, or the taking of any action in reliance on the contents of this message is strictly prohibited. If you have received this message in error, please notify the sender immediately via reply e-mail and delete the subject message from your system. Thank you.

---

From: "Bush-Yillah, Leisa (JMD)" <Leisa.Bush-Yillah@usdoj.gov>
To: Kevin Little <kevinglittle@yahoo.com>
Sent: Thursday, August 7, 2014 8:03 AM
Subject: RE: RMO Response

As a former (FAD) Adjudicator for nine years at another agency, I am very familiar with the Morgan case.

In my phone conversation with you and your client, it was my understanding that your client  alleged that U.S. Attorney Kevin Sundwall sexually harassed 3 female U.S. Attorneys and that your client was sexually harassed by U.S. Attorney Paul Vaky. This  is why sexual harassment was identified as one of the protected bases.  More importantly, we provided management with a summary of the allegations, based on the information provided.

Based on my notes, your client alleged the following:

1.  She reported that U.S. Attorney Kevin Sundwall sexually harassed 3 female U.S Attorneys;
2.  She reported that she was sexually harassed by U.S. Attorney Paul Vaky;
3.  In December 2013, she was demoted because her report reached the front office;
4.  On June 24, 2014, she was informed that her term appointment will not be renewed, despite having been renewed 3

times in the past;

Also, I provided management with your client's own summary.

When your client files her formal, she can provide a more detailed description.

---

From: Kevin Little [mailto:kevinglittle@yahoo.com]
Sent: Thursday, August 07, 2014 10:30 AM
To: Bush-Yillah, Leisa (JMD); Santos, Virna L.
Subject: Re: RMO Response

Dear Ms. Bush-Yillah:

Thank you for forwarding this information to us. Based on my initial review, the Department has not responded to the overall thrust of the complaint, i.e., that there was an ongoing pattern of retaliatory conduct that took place after the initial incidents that rose to the level of a hostile environment. Under National Railroad v. Morgan, these incidents are part of a pattern and were timely presented, since the last incident occurred within the last 45 days before filing.

I also must note that, in relation to the Department employees stationed at the Mexican consulate, my client reported gender discrimination and hostile work environment issues to her superiors, not sexual harassment. The Department has clearly misconstrued the pertinent facts in denying that they ever received a report from my client, despite the clear language of the informal complaint and referenced addendum. I further note that the conference call transcript of our initial counseling further shows that these initial incidents were identified and emphasized.

This is a pivotal issue, because this initial report is what gave rise to the long series of retaliatory acts alleged in my client's informal complaint. I want to ensure that the formal complaint will be accepted in the manner in which it was written and intended rather than how it was addressed by management. My client and I no way abide by the Department's apparent interpretation of the informal complaint.

Sincerely,

Kevin G. Little
Attorney at Law

Physical Address:
1724 Broadway, Suite 2
Fresno, California 93721

Mail and Delivery Address:
Post Office Box 8656
Fresno, California 93747

Telephone: (559) 412-6050
Facsimile: (559) 420-0839
Skype: (559) 708-4750
Email: kevinglittle@yahoo.com
Website: http://www.kevinglittle.com

CONFIDENTIALITY NOTICE: This e-mail message is covered by the Electronic Communications Privacy Act, 18 U.S.C. § 2510-2521. It is legally privileged. This information is intended only for use by the addressee. If you are not the intended recipient, you are hereby notified that any review, disclosure, copying, distribution, or the taking of any action in reliance on the contents of this message is strictly prohibited. If you have received this message in error, please notify the sender immediately via reply e-mail and delete the subject message from your system. Thank you.

From: "Bush-Yillah, Leisa (JMD)" <Leisa.Bush-Yillah@usdoj.gov>
To: "Santos, Virna L." <Virna.Santos@usdoj.gov>
Cc: "Kevin Little (kevinglittle@yahoo.com)" <kevinglittle@yahoo.com>
Sent: Tuesday, August 5, 2014 7:53 AM
Subject: RMO Response

Good morning:

Please find attached management's response to your allegations.  Please notice that this email will serve as your final interview.  In the next couple of days you and your attorney will receive a notice of the right to file (NFI) letter.  Upon receipt of the NFI letter, you will have 15 calendar days to file a formal complaint.

As you are aware, I have been on leave since July 18th.



Best regards,



Leisa

# Exhibit 11

Type your tracking number below, get delivery information instantly, with locations shown on maps.



> 70053110000037981472



Package Summary

- Status:Delivered
- Customer Service:[+1] 800-275-8777

Tracking Records

- FRESNO, CA 93747
  Thu 8/14/2014 9:49 am
  Delivered
- FRESNO, CA 93747
  Mon 8/11/2014 10:04 am
  Available for Pickup
- FRESNO, CA 93725
  Mon 8/11/2014 8:36 am
  Arrived at Unit
- FRESNO, CA 93706
  Mon 8/11/2014 4:24 am
  Departed USPS Facility
- FRESNO, CA 93706
  Sun 8/10/2014 3:57 pm
  Arrived at USPS Facility
- SAN JOSE, CA 95101

  Fri 8/8/2014 10:41 pm
  Departed USPS Facility
- SAN JOSE, CA 95101
  Fri 8/8/2014 9:44 am
  Arrived at USPS Facility
- GAITHERSBURG, MD 20898
  Thu 8/7/2014 1:50 am
  Departed USPS Facility
- GAITHERSBURG, MD 20898
  Wed 8/6/2014 10:57 pm
  Arrived at USPS Facilit



U.S. Department of Justice

Complaint Adjudication Office

Agency Complaint Number OBD-2014-00822
DJ Number 187-5-356

_____

*950 Pennsylvania Ave, NW*
*Patrick Henry Building, Suite 5300*
*Washington, DC 20530*

Ms. Virna Santos
1529 Casino Circle
Silver Spring, MD 20906

DEC 1 5 2015

Dear Ms. Santos:

This is in reference to the discrimination complaint that
you filed against the Office of Overseas Prosecutorial
Development, Assistance and Training.  Under the Department of
Justice's equal employment opportunity regulations, the
Complaint Adjudication Officer renders the final Department of
Justice decision on your complaint.  Enclosed is the final
Department of Justice decision.

## Rights of Appeal

First, you have the right to appeal any part of the
decision to the Equal Employment Opportunity Commission (EEOC).
You may do so by filing your appeal within 30 days of the date
you receive this decision.  If you are represented by an
attorney of record, the 30-day appeal period shall begin to run
the day your attorney receives this decision.  The appeal must
be in writing.  The Commission prefers that you use EEOC Form
573, Notice of Appeal/Petition, a copy of which is attached, to
appeal this decision.  The notice of appeal should be sent to
Carlton Haddon, Director, Office of Federal Operations, EEOC,
Post Office Box 77960, Washington, D.C., 20013, by mail,
personal delivery, or facsimile.  You must also send a copy of
your notice of appeal to Richard Toscano, Director, Equal
Employment Opportunity, Offices, Boards and Divisions, Two
Constitution Square, 145 N Street, NE, Suite 1W.801, Washington,
DC 20530.  You must state the date and method by which you sent
the copy of your notice to Mr. Toscano either on, or attached
to, the notice of appeal you mail to the EEOC.

Second, you have the right to file a civil action in the
appropriate United States District Court within 90 days of the
date you receive this decision.  In filing your federal
complaint, you should name Attorney General Loretta E. Lynch as
the defendant.  Even if you appeal this decision to the EEOC,

1

**EXHIBIT B**

you still have the right to go to federal court. You may file a
civil action in the United States District Court within 90 days
of the day you receive the Commission's final decision on your
appeal, or after 180 days from the date you filed your appeal
with the Commission, if the Commission has not made a final
decision by that time.

If you cannot afford to file a civil action, you can ask
the court to allow you to file the action at no cost to you.
The court may also provide you with an attorney if you cannot
afford to hire one to represent you in your civil action.
Questions concerning when and how to file a waiver of costs
should be directed to your attorney or the District Court clerk.

Sincerely,

Mark L. Gross
Complaint Adjudication Officer

cc:  Richard Toscano
     Kevin G. Little

## NOTICE OF APPEAL/PETITION
## TO THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

OFFICE OF FEDERAL OPERATIONS
P.O. Box 77960
Washington, DC 20013

Complainant Information: (Please Print or Type)

| | |
|---|---|
| Complainant's name (Last, First, M.I.): | |
| Home/mailing address: | |
| City, State, ZIP Code: | |
| Daytime Telephone # (with area code): | |
| E-mail address (if any): | |

Attorney/Representative Information (if any):

| | |
|---|---|
| Attorney name: | |
| Non-Attorney Representative name: | |
| Address: | |
| City, State, ZIP Code: | |
| Telephone number (if applicable): | |
| E-mail address (if any): | |

General Information:

| | |
|---|---|
| Name of the agency being charged with discrimination: | |
| Identify the Agency's complaint number: | |
| Location of the duty station or local facility in which the complaint arose: | |
| Has a final action been taken by the agency, an Arbitrator, FLRA, or MSPB on this complaint? | ___ Yes; Date Received _____ (Remember to attach a copy)<br>___ No<br>___ This appeal alleges a breach of settlement agreement |
| Has a complaint been filed on this same matter with the EEOC, another agency, or through any other administrative or collective bargaining procedures? | ___ No<br>___ Yes (Indicate the agency or procedure, complaint/docket number, and attach a copy, if appropriate) |
| Has a civil action (lawsuit) been filed in connection with this complaint? | ___ No<br>___ Yes (Attach a copy of the civil action filed) |

NOTICE: Please attach a copy of the final decision or order from which you are appealing. If a hearing was requested, please attach a copy of the agency's final order and a copy of the EEOC Administrative Judge's decision. Any comments or brief in support of this appeal MUST be filed with the EEOC and with the agency within 30 days of the date this appeal is filed. The date the appeal is filed is the date on which it is postmarked, hand delivered, or faxed to the EEOC at the address above.

| | |
|---|---|
| Signature of complainant or complainant's representative: | |
| Date: | |

EEOC Form 573 REV 1/01

---

# PRIVACY ACT STATEMENT

(This form is covered by the Privacy Act of 1974. Public Law 93-597. Authority for requesting the personal data and the use thereof are given below.)

1. **FORM NUMBER/TITLE/DATE**: EEOC Form 573, Notice of Appeal/Petition, January 2001
2. **AUTHORITY**: 42 U.S.C. § 2000e-16
3. **PRINCIPAL PURPOSE**: The purpose of this questionnaire is to solicit information to enable the Commission to properly and efficiently adjudicate appeals filed by Federal employees, former Federal employees, and applicants for Federal employment.
4. **ROUTINE USES**: Information provided on this form will be used by Commission employees to determine: (a) the appropriate agency from which to request relevant files; (b) whether the appeal is timely; (c) whether the Commission has jurisdiction over the issue(s) raised in the appeal, and (d) generally, to assist the Commission in properly processing and deciding appeals. Decisions of the Commission are final administrative decisions, and, as such, are available to the public under the provisions of the Freedom of Information Act. Some information may also be used in depersonalized form as a data base for statistical purposes.
5. **WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION**: Since your appeal is a voluntary action, you are not required to provide any personal information in connection with it. However, failure to supply the Commission with the requested information could hinder timely processing of your case, or even result in the rejection or dismissal of your appeal.

---

Send your appeal to:

The Equal Employment Opportunity Commission
Office of Federal Operations
P.O. Box 77960
Washington, D.C. 20013

---

*This page was last modified on January 9, 2009.*

U.S. Department of Justice

Complaint Adjudication Office

Agency Complaint Number OBD-2014-00822
DJ Number 187-5-356

_950 Pennsylvania Ave. NW_
_Patrick Henry Building, Suite 5300_
_Washington, DC 20530_

DEC 1 5 2015

## DEPARTMENT OF JUSTICE FINAL DECISION

in the case of

## Virna L. Santos v. Office of Overseas Prosecutorial Development, Assistance and Training

On August 25, 2014, complainant Virna Santos filed a formal complaint against the Office of Overseas Prosecutorial Development, Assistance and Training (OPDAT), a component within the Criminal Division of the United States Department of Justice, alleging that she had been discriminated against on the basis of her sex and prior EEO activity in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Ex. 1 (Complaint) at 14-85).[1]  On September 17, 2014, the Justice Management Division (JMD) accepted for investigation complainant's allegation that Carl Alexandre, the former OPDAT Director, Faye Ehrenstamm, OPDAT's current Director, and Paul Vaky, an OPDAT Program Manager, "engaged in disparate treatment and discriminated against" her "based on her sex[], sexual harassment and reprisal, after she reported gender discrimination against other employees under her supervision" (Ex. 5 (Sept. 17, 2014, acceptance letter) at 107-110).  The Responsible Management Officials (i.e., Alexandre, Ehrenstamm, and Vaky), complainant alleged, "created an ongoing hostile work environment by means of specific acts of reprisal including intimidation" (Ex. 5 at 107).

Based on a letter received from complainant's counsel, JMD revised the issue accepted for investigation and removed sexual harassment as a basis for the complaint (Ex. 6 (Oct. 3, 2014, acceptance letter) at 111).  JMD identified examples of the alleged discrimination as including, but not limited to:

1.   [Complainant] reported that Senior Resident Legal Advisor (RLA) Kevin Sundwall created a hostile work environment based on gender discrimination when he harassed three different female RLAs on three

---

[1]  "Ex." refers to exhibits in the Report of Investigation.

different occasions in May 2011, July 20, 2012, and July 25, 2012. According to [complainant], the [Responding Management Officials] ignored her complaints;

2.  On July 23, 2013, [complainant] verbally reported that [Vaky] created a hostile work environment based on gender discrimination, when he harassed her.  On July 31, 2013, she reported the inappropriate behavior in an official statement to [Ehrenstamm] and Human Resources.  According to [complainant], her complaints went ignored;

3.  In November 2013, management began the process of demoting [complainant] because her reports of gender discrimination and hostile work environment claims had reached the front office;

4.  In December 2013, management informed [complainant] of their intent to include a negative narrative in her performance evaluation;

5.  On June 11, 2014, [Ehrenstamm] informed [complainant] that her term appointment would not be renewed, despite having been renewed three times in the past (Ex. 6 at 112).

As relief, complainant is seeking reinstatement to her former position, compensatory damages, a revised performance evaluation, an agreement that her managers will not engage in discriminatory and/or retaliatory actions against her, and any other available remedies (Ex. 8A (Complainant's corrected statement) at 282).  The Complaint Adjudication Office received this case on May 7, 2015.

<u>Facts</u>

I.  Background

Complainant is an attorney who worked for the Department of Justice from 1995 to 2014 (Ex. 8A at 214).  Beginning in 2007, complainant was detailed to the Office of Overseas Prosecutorial Development, Assistance and Training (OPDAT) although her formal position at the time was as an Assistant United States Attorney (AUSA) in California (Ex. 8A at 214, 243; Ex. 11 (Vaky interrogatory) at 332).  OPDAT assists prosecutors and judicial personnel in other countries to develop effective criminal

justice practices (Ex. 10 (Ehrenstamm interrogatory) at 313).
OPDAT employs approximately 60 Resident Legal Advisors (RLA) and
Intermittent Legal Advisors (ILA) in approximately 37 countries
(Ex. 10 at 313).  According to OPDAT's current Director, Faye
Ehrenstamm, OPDAT does not have its own budget; rather, it
receives funding from other sources, primarily the State
Department (Ex. 10 at 321, 326).  She explained that funding
from the State Department provides both programmatic funding for
overseas positions and a few headquarters positions, and
overhead funding that supports headquarters operating expenses
and the salaries of most headquarters term employees (Ex. 10 at
321, 326).

     Complainant was initially detailed to OPDAT and worked as a
temporary trainer for Paul Vaky, who was then the Regional
Director for Latin America and the Caribbean (Ex. 11 at 332).
According to Vaky, he recruited complainant to work as a
Resident Legal Advisor (RLA) in Colombia, which she did from
2008 to 2010 (Ex. 11 at 332).  In 2010, complainant resigned her
position as an AUSA and accepted a time-limited, excepted
service appointment with OPDAT and eventually replaced Vaky as
the Regional Director for Latin America and the Caribbean (Ex.
8A at 214, 243; Ex. 11 at 332).  Time-limited, excepted service
appointments, or "term employees," are appointed for "more than
one but no more than four years to positions where the need for
an employee's service is not permanent; such as project work,
extraordinary workload, or uncertainty of future funding" (Ex.
21 (Complainant's extension statement) at 502; see also 5 C.F.R.
§ 316.301).  Complainant's first-line supervisor when she joined
OPDAT as a term employee was then-Deputy Director Faye
Ehrenstamm and her second-line supervisor was then-Director Carl
Alexandre (Ex. 8A at 216).  When Alexandre left OPDAT in 2013,
Ehrenstamm became first the Acting, and then the permanent,
Director of OPDAT and Christopher Lehmann became the Deputy
Director (Ex. 8A at 216).

     As the Regional Director for Latin America and the
Caribbean, complainant said, she supervised attorneys serving as
RLAs and other staff working in the various embassies of that
region, including Colombia and Mexico (Ex. 8A at 218).  While
serving as the Regional Director, complainant also helped create
and implement the Judicial Studies Institute (JSI), which was a
joint initiative between the State Department and Supreme Court
Justice Sotomayor (Ex. 8A at 233-234).  In December 2013,
complainant became the Regional Director for the JSI and, in
that capacity, oversaw all aspects of that program (Ex. 8A at
217).  Complainant's most recent term appointment, however, was

not extended and she ended her employment with the Department of
Justice on September 30, 2014 (Ex. 8A at 214).

II.  Complainant's allegations and related record evidence

    Complainant said that, shortly after she began working as
the Regional Director for Latin America and the Caribbean in
March 2011, an RLA in Mexico complained to her that the office's
Senior RLA, Kevin Sundwall, had created a hostile work
environment for her (Ex. 8A at 218, 221-224).  Complainant said
that she spoke with Sundwall about his behavior and also
reported it to Alexandre and Ehrenstamm (Ex. 8A at 219, 224).
Sundwall, complainant said, called Alexandre directly and
complained about complainant's approach to the situation (Ex. 8A
at 224).  The RLA left the office shortly thereafter and
complainant hired two additional RLAs, Jeannette Mercardo-Rios
and Rene Holmes, to join the office in Mexico (Ex. 8A at 218-
219, 225).  According to complainant, she told Alexandre that if
the new attorneys complained about Sundwall then management
officials would know the problem originated with him (Ex. 8A at
224-225).

    Complainant said she met with Mercardo-Rios and Holmes in
the spring of 2012 and they told her that Sundwall was engaging
in a pattern of harassing behavior – deriding them in public,
denying them information to do their jobs properly, subjecting
them to ridicule, embarrassing them at meetings, etc. (Ex. 8A at
227).  Complainant said that she passed their complaints
directly to Alexandre in May 2012 and that in the summer of 2012
she forwarded their written complaints to Alexandre and
Ehrenstamm (Ex. 8A at 219, 227-228).  Around that same time,
complainant said, she began an internal audit of the Colombia
program's finances but was met with strong resistance from Vaky,
who was then the Program Manager overseeing Colombia (Ex. 1 at
16).  According to complainant, in late 2011 or early 2012, Vaky
instructed his subordinates in Colombia not to contact her
directly (Ex. 8A at 257-258).  When complainant tried to discuss
the matter with her supervisors, she said, she was accused of
micromanaging her employees (Ex. 8A at 259).

    Complainant said that when she learned in the fall of 2012
that Alexandre was considering transferring Mercardo-Rios at the
end of Mercado-Rios's term, she expressed her concern that such
a transfer could be considered retaliation (Ex. 1 at 17; Ex. 8A
at 231-232).  Complainant said she then contacted Deputy
Assistant Attorney General Bruce Swartz about this concern and
that, in response, he arranged a meeting of several management

officials in the fall of 2012 (Ex. 1 at 17; Ex. 8A at 231).  As
a result of that meeting, complainant said, management personnel
decided to move several personnel in the Mexico office:
Sundwall returned to Washington, D.C., Holmes remained in
Mexico, and Mercardo-Rios transferred to El Salvador (Ex. 1 at
17; Ex. 8A at 232).  According to complainant, management
officials incorrectly viewed the problem in Mexico as a
management issue and not as gender discrimination (Ex. 1 at 17;
Ex. 8A at 232).

    Complainant said that almost immediately after she reported
the situation in Mexico, Alexandre and Ehrenstamm engaged in a
pattern of harassment toward her, which included false
allegations of her missing meetings, being AWOL, not responding
to emails, as well as complaints about her written work product
(Ex. 8A at 236-240).  Complainant also said that Alexandre and
Ehrenstamm discussed her annual performance evaluation with her
in February 2013 and that, while Alexandre was generally
complimentary and praised her work on the Judicial Studies
Institute, he told her that she had "exposed [OPDAT] to the
front office"[2] when she reported the personnel issues in Mexico
(Ex. 1 at 18; Ex. 8A at 234).  As a result of that, complainant
said, Alexandre and Ehrenstamm told her that they were planning
to advertise her Regional Director position and hire someone
else, although she was welcome to apply for the position (Ex. 8A
at 234).  Complainant said she believed their comment about
advertising her position after she exposed OPDAT to the front
office was in relation both to her reporting gender
discrimination in the Mexico office and for reporting fiscal
irregularities in the Colombia office (Ex. 8A at 235, 245-246).
According to complainant, she had reported to her supervisors
that she believed Vaky had facilitated a large, illegal transfer
of grant funds to the Colombian government (Ex. 8A at 219-220,
235).

    Complainant said that after meeting with her managers in
February they made it extremely difficult for her to perform her
duties.  Specifically, complainant said that Alexandre and
Ehrenstamm excluded her from emails and conversations concerning
her areas of responsibility and then held her responsible for
any negative results (Ex. 8A at 248-250).  She also said that
they would bypass her within the chain of command (Ex. 8A at
249, 259).

---

[2] Complainant explained that Alexandre was referring to Deputy Assistant
Attorney General Swartz and the Chief of the Criminal Division (Ex. 8A at
235).

Complainant said that on July 23, 2013, she was in a
courtroom in Colombia with Vaky when Vaky inappropriately placed
his hand on her lower back, near her buttocks, as she leaned
down to speak with him[3] (Ex. 8A at 250-251).  Complainant
explained that Vaky touched her "in a sexual manner that was
inappropriate" and "unwelcomed" (Ex. 8A at 220).  Complainant
said that she immediately told him not to touch her, walked
away, and reported it to Deputy Director Lehmann (Ex. 8A at
251).  The record includes a July 26, 2013, email from
complainant to Lehmann and Ehrenstamm in which she describes the
incident with Vaky (Ex. 24 at 663-664).  Both Lehmann and
Ehrenstamm responded to complainant via email, thanked her for
reporting the incident, and scheduled a meeting with her and
Renee Caputo, an employee in the Human Resources Division (Ex.
24 at 662-663).  Complainant said that she was not aware of any
further action taken because of Vaky's actions (Ex. 8A at 252,
255-256).  Instead, complainant said, her managers continued to
undermine her authority in supervising Vaky (Ex. 8A at 252-253).
Complainant explained that this incident occurred during the
middle of "a very serious audit" and that she received no
support from her supervisors in handling the audit process (Ex.
8A at 253).  Later, complainant said, Vaky was promoted to a
Regional Director position (Ex. 8A at 255-257).

Complainant said that Ehrenstamm told her in November 2013
that someone had been hired to replace her as the Regional
Director of Latin America and the Caribbean but that a new
position, Regional Director for the Judicial Studies Institute,
had been created for her (Ex. 8A at 261).  Complainant assumed
the new position in December 2013 (Ex. 8A at 263).  Complainant
explained that, as a result of the transfer, her title and
salary did not change but that she went from overseeing a budget
of $60 million and supervising more than 12 attorneys to
overseeing a budget of less than $1 million and sharing a
support person with another program (Ex. 8A at 264-266).
Complainant also said that she was relocated to the smallest
available attorney's office when OPDAT moved locations (Ex. 8A
at 252, 266-268).

In December 2013, complainant said, Lehmann gave her a
draft performance appraisal which, while mostly positive,
incorrectly attributed the mismanagement of program funds to her
(Ex. 8A at 269-271).  A copy of the draft evaluation is included

---

[3] Complainant said that she was standing while Vaky was sitting (Ex. 8A at
251)

in the record (Ex. 22 at 511-523).  The final paragraph of the
proposed narrative accompanying the evaluation stated:

> LAC is a large region with [an] equivalently large
> budget.  The size of "pipeline" (unspent funds) raised
> particular concern this year, and brought increased
> unfavorable attention by INL to the problem.
> [Complainant's] team was only partially successful in
> addressing INL's concerns in this regard, or in
> solving the underlying financial issues.  While many
> factors were involved in the financial management
> deficiencies, particularly of the Colombia program,
> careful attention to these challenges will be
> necessary if these financial management issues are to
> be successfully addressed, going forward.

(Ex. 22 at 523).  Complainant submitted a written objection to
the narrative on November 5, 2013, explaining that she inherited
the questionable financial situation, was repeatedly obstructed
when she tried to rectify the situation, and was not supported
in her efforts to do so by her managers (Ex. 22 at 525-527).

Complainant sent another email to Lehmann and Ehrenstamm on
March 14, 2014, requesting her final evaluation because she
still had not received it at that time (Ex. 22 at 524-525).  In
her request, she repeated her objections to the draft paragraph
about the financial management issues in Colombia, raised
additional concerns about Vaky's mismanagement of funds, and
explained that she should not be held responsible for the
situation, despite serving as Regional Manager, because Vaky
routinely operated without her knowledge and/or contrary to her
instructions and that her managers enabled Vaky in these efforts
(Ex. 22 at 524-525).  Ultimately, complainant said, the
paragraph regarding financial mismanagement of the Colombia
program was removed from her final evaluation (Ex. 8A at 271-
272).  Complainant's final evaluation is included in the record
and reflects that the paragraph she identified was not included
in her evaluation and that she received an overall evaluation of
Exceeds Expectations (Ex. 20 at 484-499).  Although complainant
ultimately signed her evaluation, she said that she would not
have done so had she noticed at the time that she was rated a
three out of five points on some of the elements of her position
(Ex. 8A at 271-273, 278-279).  Complainant said that she
believed Ehrenstamm heavily influenced her evaluation and noted
that she learned from Laurel Glenn, an administrative officer in
OPDAT, that Ehrenstamm had asked Glenn in the spring of 2013 to
document complainant's delays in processing her subordinates'

performance evaluations (Ex. 1 at 32; Ex. 8A at 272-274).  The unusual nature of the request, complainant explained, is that Ehrenstamm instructed Glenn not to discuss the matter via email (Ex. 8A at 280).

Complainant sent Ehrenstamm an email on June 9, 2014, informing Ehrenstamm that her term appointment was due to expire in September and asking Ehrenstamm if Ehrenstamm intended to extend her appointment (Ex. 25 at 678).  Complainant said she received an email from Ehrenstamm on June 11, 2014, stating that OPDAT had "yet to receive any programmatic money to support [complainant's] position" and that she was unable "to draw upon [OPDAT's] overhead reserves" to support complainant's position into the next fiscal year (Ex. 1 at 33).  For that reason, Ehrenstamm explained in the email, she would "not be able to extend [complainant's] appointment beyond September 30," 2014 (Ex. 1 at 33).

Complainant contended that her supervisors prevented her from securing the funding necessary to support her new position because they excluded her from December 2013 funding meetings with the State Department (Ex. 8A at 261-262).  According to complainant, her managers told her that OPDAT lacked funding to support her position but she understood that the State Department had agreed to fund at least 75% of her position (Ex. 8A at 262-263, 288-289).  OPDAT's explanation of reduced funding is a pretext, complainant said, because the Judicial Studies Institute is currently operational and another employee is managing it (Ex. 8A at 285-287).  Complainant also said that when OPDAT lost funding for other positions in the past, OPDAT made efforts to find new funds or positions for the affected employees (Ex. 8A at 276-277, 287-288).

In sum, complainant alleged that, after reporting discriminatory conduct by Sundwall, notifying her managers of financial improprieties involving the Colombia program, and objecting to Vaky's inappropriate touch, she was retaliated against when she:  was prevented from performing her supervisory functions, accused of not submitting leave requests and failing to respond to emails that she had not received, notified that she would be removed from her position as Regional Director for Latin America and the Caribbean, demoted, given a proposed negative evaluation, relocated to a smaller office, removed from negotiations to secure funding for her new position, and not renewed as a term employee beyond September 30, 2014.

III. Management's response and related record evidence

Faye Ehrenstamm said that in 2011 and again in 2012 complainant relayed to her concerns about Sundwall's performance and management style and reported that employees in Sundwall's office had been subjected to a hostile work environment; she denied that complainant characterized Sundwall's conduct as gender discrimination and/or sexual harassment (Ex. 10 (Ehrenstamm interrogatory) at 315-316). Swartz said that he learned from Alexandre that complainant was concerned about a "negative environment" in the Mexico office between Sundwall and some, but not all, RLAs (Ex. 12 (Swartz interrogatory) at 345). According to Ehrenstamm, there were "communication, personality, and management issues" in the Mexico office including concerns that some field office staffers raised "about the headquarters management team," i.e., complainant (Ex. 10 at 316). Ehrenstamm described the team in Mexico as not "jelling" (Ex. 10 at 316) and Swartz understood the problem to be management issues involving personality conflicts (Ex. 12 at 345).

The record includes a June 6, 2011, assessment of Sundwall's performance drafted by complainant and sent to Alexandre (Ex. 23 at 628-635). It highlights several deficiencies in Sundwall's performance and management style, and identifies a lack of communication with his subordinates as "the single most vexing issue in pursuing and achieving" OPDAT's goals in Mexico (Ex. 23 at 631). It also provides specific examples of Sundwall's failure and/or refusal to communicate effectively with the Program Manager in Mexico (Ex. 23 at 632). It does not, however, identify or suggest that the management issues are the result of gender discrimination. The record also includes a July 30, 2012, memorandum, with supporting emails, from Mercado-Rios to complainant regarding the "negative work environment" in Mexico (Ex. 23 at 602-617). It sets forth Mercado-Rios's observations of Sundwall's ineffective and obstructive management style, particularly concerning his staffing decisions and lack of communication, but it does not identify or suggest that Sundwall engaged in discrimination based on her gender. The record includes numerous other emails and documents relating and reporting on management issues in the Mexico office but none identifies the issues as being the result of gender discrimination (Ex. 23 at 592-599). The record also includes voluminous pages of emails between two of the RLAs in Mexico and complainant, between complainant and Alexandre discussing the situation in Mexico, and between the two RLAs and representatives from the Human Resources Division who were looking into the situation. The majority of these emails

concern a lack of communication in the office, failure to notify personnel of meetings, failure to properly supervise subordinates in the office - particularly in terms of their workload and areas of responsibility, and a general lack of respect shown to the RLAs by Sundwall. None of these documents, however, identifies or suggests that the issues pertain to or are the result of gender discrimination. Also in the record is Ehrenstamm's write-up of a November 2012 phone call between herself, Alexandre, and Mercado-Rios, in which they discussed the situation in Mexico and, as an effort to rebuild the team in Mexico, offered Mercado-Rios her choice of a transfer to another office (Ex. 23 at 636-640).

Swartz said that he was not unhappy with complainant's decision to raise concerns about the situation in Mexico and was both "reassured" that Alexandre elevated the matter to the Criminal Division for further inquiry and "grateful" that the issues could be addressed (Ex. 12 at 346, 348). Following an inquiry Human Resources conducted into the situation (see Ex. 12A at 356-357), Swartz said, he and Bruce Ohr, Counsel to the Assistant Attorney General of the Criminal Division, met with Sundwall and counseled him, more than once, on the deficiencies noted in his management style (Ex. 12 at 346; see also Ex. 12B at 358). OPDAT management then took corrective action by reorganizing the team in Mexico (Ex. 10 at 316-317; Ex. 12 at 346).

Ehrenstamm said that she learned on July 26, 2013, that complainant felt that Vaky had inappropriately touched her (Ex. 10 at 318). In response, Ehrenstamm said, she and Renee Caputo met with complainant to address complainant's concerns, instructed complainant not to interact with Vaky until they could resolve the matter, and explained complainant's options for filing an EEO complaint (Ex. 10 at 318). Ehrenstamm and Caputo also met with Vaky, Ehrenstamm said, and Vaky explained to them that he did not intend to offend complainant and was "shocked" that complainant responded the way she did (Ex. 10 at 318). Vaky denied touching complainant inappropriately (Ex. 11 at 335). He said that, during a public hearing in a courthouse, complainant leaned down and whispered something to him, which he could not hear (Ex. 11 at 335). He explained that he then placed his hand on complainant's back "for approximately one second" to put his ear "closer to her" so he could hear what she was saying (Ex. 11 at 335). When complainant objected, Vaky said, he was "surprised" and immediately removed his hand and apologized (Ex. 11 at 335).

Ehrenstamm said that she and Caputo verbally counseled Vaky
to be mindful of his interactions with others and to be aware
that his conduct made complainant uncomfortable (Ex. 10 at 318-
319; Ex. 11 at 335-336).  Vaky said that, since then, he has
stayed away from complainant (Ex. 11 at 336).  Ehrenstamm said
that she and Caputo felt that no further disciplinary action was
required, as "it was clear that the touching occurred with no
intention of being inappropriate" (Ex. 10 at 319).  Ehrenstamm
denied that she retaliated against complainant based on this
incident (Ex. 10 at 320).

With respect to complainant's new position as Regional
Director of the Judicial Studies Institute, Ehrenstamm explained
that complainant had been instrumental in developing the JSI
program and, because the JSI was a growing initiative and OPDAT
wanted it to expand, she and Lehmann discussed with complainant
in the fall of 2013 the possibility of complainant becoming the
full-time Director of the program (Ex. 10 at 320).  Swartz
agreed that the JSI was one of OPDAT's "most important
initiatives" and "merited [complainant's] full-time attention"
(Ex. 12 at 349).  He said that he thought it was important for
complainant to serve as Regional Director of the JSI "given her
prior role in helping to establish" it (Ex. 12 at 350).
Ehrenstamm said that complainant had a "positive response" to
the proposed reorganization, voluntarily agreed to take the new
position, and never expressed to Ehrenstamm that she was unhappy
with the transfer (Ex. 10 at 320-321).  Neither Ehrenstamm nor
Swartz considered the new position a demotion (Ex. 10 at 321;
Ex. 12 at 350-351), and both Ehrenstamm and Swartz denied that
the reorganization was related to complainant having brought her
previous concerns to the attention of the Front Office (Ex. 10
at 321; Ex. 12 at 350).

Ehrenstamm said that she explained to complainant when she
took the JSI position that OPDAT would "carry" the position
through its overhead funds for one year but that afterwards
complainant would need to receive programmatic funding to
continue in the position (Ex. 10 at 322, 326).  Ehrenstamm said
that she learned from Lehmann that during an October 2013
meeting with the State Department, State Department offered to
fund the position at a GS-13 level, rather than the GS-15
attorney level that complainant held (Ex. 10 at 322).
Complainant, Ehrenstamm said, was "insulted and offended by this
offer" and informed the State Department that she found the
offer "demeaning" (Ex. 10 at 322).  State Department then
withdrew its offer to fund the position at the GS-13 level and,
when State Department sent OPDAT an email that it would not be

funding the position for the upcoming fiscal year, Ehrenstamm
said that she took over the funding negotiations herself but was
ultimately unable to secure funding and, at the time of her
interrogatory, had still not secured funding to support a full-
time headquarters JSI position (Ex. 10 at 322). Swartz said
that the fact OPDAT was unable to secure funding for the
Regional Director position "reflects larger structural issues in
[OPDAT's] funding relationship" with the State Department (Ex.
12 at 351).

     With respect to complainant's term appointment, Ehrenstamm
said that she and Swartz discussed the matter and they decided
not to renew her appointment "because of overhead funding
constraints" (Ex. 10 at 326). Because OPDAT did not receive
funding from the Department of State for the Regional Director
position, Ehrenstamm and Swartz explained, they could not
maintain the position (Ex. 10 at 326; Ex. 12 at 352-353).
Ehrenstamm said that complainant's position was made possible
through overhead funds and projections of available overhead
funds "were on a significant downward trend" (Ex. 10 at 326).

     Ehrenstamm acknowledged that she directed Glenn to track
and report the completion of OPDAT's performance evaluations and
that she received notification of delays in the processing of
complainant's, and other teams', performance evaluations (Ex. 10
at 323). She did not recall instructing Glenn not to discuss
this matter via email (Ex. 10 at 323).

     Ehrenstamm denied that complainant had ever said to her
that complainant felt she had been subjected to discrimination,
reprisal, or a hostile work environment – apart from the
incident involving Vaky (Ex. 10 at 315, 327). Swartz also said
that he was unaware complainant felt she had been discriminated
against or subjected to a hostile work environment (Ex. 12 at
345).

IV.  Other statements

     Tiffani Williams is a Human Resources Specialist within the
Criminal Division (Ex. 15 (Williams statement) at 417). She
said that she and her supervisor, Renee Caputo, were involved in
"an administrative inquiry" into the situation in Mexico and
Sundwall's management of the office there (Ex. 15 at 422, 424-
425). According to Williams, the complaints against Sundwall
were not based on allegations of gender discrimination; rather,
Human Resources determined that the issues arose from
communication breakdowns and personality conflicts and were

treated as such (Ex. 15 at 423-426).  According to Williams, the
situation in Mexico "wasn't a good work dynamic" so OPDAT
managers decided to restructure the office (Ex. 15 at 427).

Laurel Glenn, an Administrative Officer who worked for
OPDAT from April 2012 to April 2013, said that "there was a very
distinct turn of events in the way [complainant] was treated as
opposed to the other Regional Directors" beginning in July 2012
(Ex. 13 (Glenn statement) at 362, 365-366).  Glenn explained that
complainant's annual performance evaluation "was held longer"
and that she was "singled out for being late with her" own
evaluations (Ex. 13 at 366).  Glenn acknowledged that "obviously
the evaluations were very sensitive" given the situation in
Mexico and Glenn believed that evaluations were being retained
by upper management until the issues concerning the Mexico
office were resolved (Ex. 13 at 366-367).

Glenn also said that Ehrenstamm directed her to write a
"personal statement," albeit not via email, detailing how
complainant "was negligent" in her administrative duties
concerning her subordinates' evaluations (Ex. 13 at 367, 373-
374).  When she did so, Glenn said, Ehrenstamm complained that
it was not "detailed enough" (Ex. 13 at 367).  Glenn also said
that, at times, Ehrenstamm and Alexandre would meet with Vaky
without complainant present to discuss matters related to
complainant's region of supervision (Ex. 13 at 368).  Ehrenstamm
also once questioned complainant's leave request, Glenn said
(Ex. 13 at 368-370).

Glenn believed that complainant was treated differently
than other Regional Managers because both Ehrenstamm and
Alexandre "had a longstanding professional relationship" with
Sundwall and that Ehrenstamm and Alexandre were unhappy that
complainant had raised the "sexual harassment charges" against
him (Ex. 13 at 370-371).  Glenn also said that, unlike with
other term employees, Ehrenstamm waited "weeks and weeks" before
renewing complainant's contract in 2013 (Ex. 13 at 371).  Glenn
further said that Ehrenstamm and Alexandre "were very
intimidating individuals" and if an employee "did not show
complete and total loyalty" then "they made it clear that there
would be repercussions" (Ex. 13 at 372).

Edna Rosario-Munoz was hired by complainant to work as a
contractor for OPDAT in 2011 (Ex. 14 (Rosario-Munoz statement)
at 393); she became a term employee for OPDAT in 2012 (Ex. 14 at
387-389).  Rosario-Munoz said that complainant "had a very tense
relationship with [OPDAT] management" and "was always

complaining" that she was having difficulty communicating with
OPDAT managers and personnel in her region, and that her work
environment was "tense" (Ex. 14 at 400, 407-408).  Rosario-Munoz
acknowledged that complainant considered her move to Regional
Director of JSI as a demotion but that she (Rosario-Munoz) did
not have an opinion on whether it was (Ex. 14 at 400).
According to Rosario-Munoz, the JSI is "a big program" and
managing it "is a lot of responsibility," and she said that the
program "needed leadership" (Ex. 14 at 401-402).  Rosario-Munoz
said that Michelle Morales is detailed to OPDAT from another
section and currently serves as the Regional Director of Western
Hemisphere Programs[4] and also oversees the JSI (Ex. 14 at 392,
403, 406).

Williams, the Human Resources Specialist, said that
complainant filed a grievance after learning that her term
appointment would not be renewed beyond September 2014 (Ex. 15
at 433).  Williams said that she explained to complainant that
she could not grieve the non-renewal of a term position but that
she could file an EEO complaint if she believed she had been
discriminated against (Ex. 15 at 433-437).  Williams recalled a
meeting with Ehrenstamm, Assistant Agency Counsel Mona Iyer, and
the new OPDAT Assistant Director during which someone asked
whether OPDAT was required to extend complainant's term
appointment or give her advanced notice if her appointment was
not going to be extended (Ex. 15 at 438-440).  Williams said
that the managers "mentioned something" about why they did not
want to extend complainant's appointment but that she could not
recall what it was (Ex. 15 at 440).  Financial matters are
always a concern with term appointments, Williams said, but she
could not recall if that was the determining factor (Ex. 15 at
440).  Williams said she thought "it wasn't working out or
something like that, and there wasn't a need to extend her
appointment" (Ex. 15 at 440).  Williams, however, said that she
knew "for sure" that OPDAT managers did not discuss complainant
having filed complaints as the basis for not extending her
appointment (Ex. 15 at 441).

## Analysis

The issue in this case is whether OPDAT management
officials discriminated against complainant because of her sex
and retaliated against her because of her prior EEO activity.
Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.

---

[4]  According to Rosario-Munoz, the Regional Director for Western Hemisphere
Programs was previously referred to as the Regional Director for Latin
America [and the Caribbean] (Ex. 14 at 399).

§ 2000e et seq., prohibits federal employers from discriminating against employees on the basis of certain protected characteristics, such as one's sex, and retaliating against them because they engaged in protected EEO activity.  To succeed on a claim of sex discrimination, complainant must initially show that she suffered an adverse employment action or was treated less favorably than others because of her sex.  See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-253 (1981); Johnson v. Koppers, Inc., 726 F.3d 910, 915 (7th Cir. 2013). Here, however, complainant has alleged that after she raised concerns about possible discriminatory actions by Sundwall in Mexico, possible financial improprieties by Vaky in Colombia, and again after she complained that Vaky inappropriately touched her, OPDAT management officials retaliated against her by taking various adverse actions against her and that these actions, collectively, resulted in a hostile work environment. Complainant has thus alleged retaliation under Title VII, not gender discrimination, and her complaint will be evaluated as such.

To establish a claim of retaliation under Title VII, the record must demonstrate that:  (1) complainant engaged in protected activity under Title VII and that management was aware of such activity; (2) complainant suffered an adverse employment action subsequent to engaging in the protected activity; and (3) a causal connection exists between complainant's participation in the protected activity and the adverse employment action. Galdieri-Ambrosini v. National Realty & Development Corp., 136 F.3d 276, 292 (2d Cir. 1998).  An adverse employment action is a materially adverse change in the terms and conditions of one's employment.  Kuhn v. Washtenaw County, 709 F.3d 612, 625 (6th Cir. 2013).  Types of adverse employment actions include termination, demotion, a less distinguished title, material loss of benefits, or significantly diminished responsibilities, ibid., as well as conduct by an employer that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination," Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006).

After a careful review of the record, complainant cannot establish that she was subjected to unlawful retaliation because she cannot show on this record that any of the adverse actions she experienced were causally connected to protected activity. This is primarily due to the fact that complainant traces the adverse actions she experienced to the reports of management issues and financial irregularities she made to her managers in July 2012, but the record does not support a finding that

complainant engaged in any protected activity until <u>July 2013</u>, when she reported Vaky's allegedly inappropriate touching.

Specifically, complainant asserts that OPDAT management began retaliating against her after she notified her supervisors first in 2011 and then in the summer of 2012 that Sundwall had engaged in gender-based discrimination by subjecting women RLAs in Mexico to a hostile work environment.  Neither Ehrenstamm nor Swartz characterized complainant's allegations as gender discrimination and/or gender-based harassment, however, and instead, they asserted that complainant had raised concerns about Sundwall's ineffective and obstructive management style. Williams, the Human Resources Specialist who received several emails from, and spoke directly with, the RLAs in Mexico about the situation, and who participated in an administrative inquiry into the situation, also agreed that "it was never an issue of gender" (Ex. 15 at 422-427).  Complainant, on the other hand, insists that she repeatedly characterized the situation as gender-based discrimination when she raised it with her supervisors.

An objective reading of the record documents generated contemporaneously about the situation in Mexico (<u>e.g.</u>, emails, memoranda, summaries of conversations and/or meetings – most of them written by complainant (Ex. 23 at 537, 560-561, 589, 591, 600, 628-635) and the RLAs in Mexico (Ex. 23 at 528-34, 538-540, 555-557, 562-571, 573-590, 592-599, 602-625) fails to support complainant's claim that she notified her supervisors of <u>gender-based</u> discrimination occurring in the Mexico office.  It is clear from the documents that both of the RLAs in Mexico and complainant concluded that Sundwall had created a hostile, dysfunctional, and extremely challenging work environment.  But one is hard-pressed to conclude that either complainant or the RLAs were objecting to <u>gender-based</u> discriminatory treatment. Rather, the documents indicate that the RLAs and complainant were objecting to an environment that was permeated with general disrespect, mutual distrust, power struggles, ineffective leadership, possible ethical violations, a willful lack of communication, entrenched dysfunction arising from the tense relationship between some Foreign Service Nationals and rotating Embassy staff, and territorial disputes concerning workload and areas of responsibility.  Nowhere in the documents written contemporaneously to the events, however, do the RLAs or complainant suggest that Sundwall's actions were motivated by discriminatory animus, or that Sundwall would not have subjected the RLAs to such conduct if they were men.  For this reason, the record does not support a finding that complainant engaged in

protected EEO activity when she notified OPDAT management about
Sundwall's conduct in Mexico.  Thus, any adverse actions
allegedly taken against complainant after she did so would not
be considered unlawful retaliation for having engaged in
protected EEO activity.

Complainant also alleges that OPDAT management retaliated
against her when, around the same time she reported Sundwall's
conduct in Mexico, she notified OPDAT management about serious
financial improprieties concerning the program in Colombia.
Reporting financial improprieties, however, is not protected
activity under Title VII.  Similarly, any retaliatory actions
complainant's supervisors may have taken as a result of her
having done so - while perhaps violating other laws,
regulations, or policies - would not support a retaliation claim
brought pursuant to Title VII.  For these reasons, complainant's
allegations that she was treated unfavorably, subjected to
increased scrutiny, and notified during her February 2013
evaluation that she would be removed from her position as
Regional Director for Latin America and the Caribbean cannot be
considered retaliation in violation of Title VII because she did
not, on this record, engage in activity protected by Title VII
prior to these events occurring.

Complainant, however, clearly engaged in protected activity
in July 2013 when she reported that Vaky had inappropriately
touched her while she was in Colombia.  And she alleges that she
suffered (and/or continued to suffer) adverse employment actions
after doing so.  Thus, complainant can succeed on her
retaliation claim if the record supports a finding that she
suffered an adverse employment action following her July 2013
complaint and that any such action was causally connected to
that complaint.[5]

Complainant alleges that she was subjected to a hostile
work environment after engaging in protected activity (i.e.,
reporting Vaky's inappropriate touching) and that the hostile
work environment resulted from both general mistreatment
following her complaint and specific actions of direct
retaliation, such as a demotion, a proposed negative evaluation,
and a decision not to renew her term appointment.  Creating and
maintaining a hostile work environment, as complainant has
alleged her managers did here, could support a charge of

_____

[5]  After complainant reported the incident to her supervisors, they
immediately and appropriately responded by investigating the matter,
counseling Vaky to be mindful of his conduct, and advising complainant of her
EEO rights.  Vance v. Ball State Univ., 133 S. Ct. 2434, 2439 (2013).

retaliation if the hostile work environment is shown to be causally connected to an employee's protected activity.  See, e.g., Gowski v. Peake, 682 F.3d 1299, 1311-1312 (11th Cir. 2012) (collecting cases).  A hostile work environment is characterized by harassment sufficiently severe or pervasive to alter the terms and conditions of one's employment.  Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 65-67 (1986).  Whether a hostile work environment exists has both objective and subjective components.  Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-22 (1993).  In other words, the inquiry asks whether the complainant was offended by the work environment and whether a reasonable person would likewise be offended.  Ibid.

     After careful review of the record, the evidence does not support complainant's claim of a retaliatory hostile work environment because the actions she complains of are not sufficiently adverse or severe to have created an objectively abusive environment, are not supported by the record, and are not causally connected to complainant's protected activity. Complainant alleges that she was informed in February 2013 that she would not continue in her position as Regional Director for Latin America and the Caribbean and that, in November 2013, she was demoted to the position of Regional Director of the Judicial Studies Institute.  OPDAT management's decision in early 2013 to remove complainant as Regional Director of Latin America and the Caribbean may well have been an extension of their decision to restructure the Mexico office following complaints, and findings, of mismanagement within that office.  It may also have resulted, as complainant contends, from the fact that Ehrenstamm and Alexandre were unhappy with complainant's decision to alert the Criminal Division's Front Office to the situations in Mexico and Colombia.  But even so, the record here does not support a finding that complainant has established a valid retaliation claim under Title VII.  As explained above, any decision Ehrenstamm and Alexandre made concerning complainant's position prior to July 2013 does not support her retaliation claim because, on this record, complainant did not engage in protected activity until July 2013.  In any event, after complainant said that Ehrenstamm and Alexandre told her in February 2013 that they were going to remove her from her position as Regional Manager for Latin America and the Caribbean, OPDAT extended her term appointment in March 2013 for an additional three months (Ex. 18 at 448) and, in June 2013, OPDAT again extended her term appointment for an additional three months, through September 2013 (Ex. 18 at 449).  In September 2013, OPDAT management extended her term appointment for an additional year, through September 2014 (Ex. 18 at 450)

Complainant alleges that she was demoted in December 2013
when she was reassigned to the position of Regional Director of
the Judicial Studies Institute.[6]  Complainant's lateral
reassignment to the position of Regional Director of the
Judicial Studies Institute was not an adverse employment action.
Complainant retained her title of Regional Director and
maintained the same grade level, step, and salary that she held
as Regional Director of Latin America and the Caribbean (Ex. 18
at 452).  To be sure, complainant viewed the reassignment as a
demotion.  Complainant explained that she no longer supervised
attorneys and she was responsible for a much smaller budget than
she oversaw previously.  Certainly some lateral transfers may be
considered demotions, and therefore adverse employment actions,
if an employee is given considerably less responsibility and has
fewer promotional and or employment opportunities as a result of
the transfer.  See, e.g., Nichols v. Southern Illinois
University-Edwardsville, 510 F.3d 772, 780 (7th Cir. 2007)
(explaining that a lateral transfer that reduces an employee's
career prospects because it prevents her from using her skills
and experience may be considered an adverse employment action
even though the employee's financial terms remain unchanged).
But the Judicial Studies Institute was, as Rosario-Munoz
described, "a big program" that "needed leadership" (Ex. 14 at
401-402).  Moreover, neither Ehrenstamm nor Swartz viewed the
new position as a demotion (Ex. 10 at 321-323; Ex. 12 at 350-
351).  They explained that OPDAT wanted to expand the Judicial
Studies Institute and, given that complainant was instrumental
in developing and promoting the program, it made sense for her,
rather than someone else, to continue leading it (Ex. 10 at 320-
321; Ex. 12 at 349-350).

The position description included in the record sets forth
the major duties of the Regional Director for the JSI (Ex. 19 at
454-457).  It indicates that the Regional Director is
responsible for all aspects of the JSI program, which has a
primary focus of developing and presenting educational programs
to judges and other court personnel (Ex. 19 at 454-457).  Thus,
while complainant no longer supervised attorneys who were
assigned to various countries within a regional area,
complainant was instead wholly responsible for managing a new,
complex, and emerging program within OPDAT.  Under these
circumstances, a reasonable person would not consider the

---

[6] The record shows that this assignment took effect on December 15, 2013 (Ex.
18 at 452).

transfer to be a demotion, an adverse employment action, or contributing to a hostile work environment.

Complainant also challenged her proposed evaluation which, as originally drafted, suggested that she bore some responsibility for "the financial management deficiencies" within her regional areas of responsibility (Ex. 22 at 523). But after complainant raised her concerns about the proposed narrative with her supervisors, the language she opposed was removed from her final evaluation (Ex. 20 at 498).  And while she still objected to some of the individual ratings on her performance elements, complainant's immediate supervisor, Lehmann, explained that his assessment of complainant's performance over the rating period was accurately reflected in the ratings she received (Ex. 22 at 504-505).  Because complainant's final evaluation did not include the objected-to language, and because complainant received an overall evaluation of Exceeds Expectations, complainant cannot show on this record that her evaluation constituted an adverse employment action or contributed to a hostile work environment.  See Douglas v. Donovan, 559 F.3d 549, 552 (D.C. Cir. 2009) ("[P]erformance evaluations ordinarily are not actionable under Title VII."); Lyons v. England, 307 F.3d 1092, 1118 (9th Cir. 2002) (holding that a mediocre performance evaluation that did not result in any further negative employment action did not violate Title VII).

Finally, complainant alleges that OPDAT's decision not to renew her term appointment after it expired in September 2014 was another act of retaliation and contributed to a hostile work environment.  Assuming that OPDAT's decision not to renew an employee's term appointment is an adverse employment action, complainant cannot show on this record that OPDAT's decision was causally connected to her July 2013 complaint about Vaky's inappropriate touching.  Most importantly, OPDAT management renewed complainant's term appointment for a full year in September 2013 (Ex. 18 at 450) - well after she complained about Vaky's conduct in July 2013 (and about the situations in Mexico and Colombia in 2011 and 2012).  If OPDAT management intended to use her term appointment as a vehicle of retaliation following her protected conduct, one would expect them to do so at the first opportunity (i.e., September 2013) rather than extend her position for four times the length of her two previous extensions.

Moreover, Ehrenstamm explained that she told complainant that funding for the new Regional Director position would be

available for the first year through OPDAT overhead funds but
that, in the next fiscal year, OPDAT would need to secure
additional funding from the State Department to support and
maintain the position (Ex. 10 at 322, 326). According to
Ehrenstamm, she took over funding negotiations from complainant
after she learned that negotiations between the State Department
and complainant had broken down and the State Department
withdrew its initial offer to partially fund the new position
(Ex. 10 at 322). Ehrenstamm said that she was ultimately
unsuccessful in securing funding for the position and, for that
reason, OPDAT was unable to renew complainant's term appointment
(Ex. 10 at 322, 326-327). Swartz agreed that complainant's term
appointment was not renewed due to a lack of funding (Ex. 11 at
352-353).

Complainant, on the other hand, contends that OPDAT's
reason for not renewing her term appointment is a pretext for
unlawful discrimination and retaliation because other term
employees had their appointments renewed even when funding was
unavailable and because complainant had been in negotiations
with the State Department to cost-share her position (Ex. 8A at
275-277). Williams's statement could provide some support for a
finding that financial issues may not have been the sole reason
OPDAT managers decided not to renew complainant's appointment.
Williams explained that she attended a meeting with OPDAT
managers during which complainant's term appointment was
discussed (Ex. 15 at 438-441). Williams acknowledged that
financial considerations were always a factor when considering
term appointments but that she could not recall "if that was the
determining factor" in deciding not to renew complainant's
appointment (Ex. 15 at 440). According to Williams, she thought
the appointment "wasn't working out or something like that" but
that she did not know specifically why complainant's appointment
was not renewed (Ex. 15 at 440).

It is possible that Ehrenstamm and Alexandre did not want
to extend complainant's appointment for other reasons and that a
funding limitation was a convenient, if not the primary, reason
for their decision. Ultimately, however, it is complainant's
burden to show that OPDAT managers acted with retaliatory animus
when they did not renew her term appointment. Kwan v. Andalex
Group, LLC, 737 F.3d 834, 845-847 (2d Cir. 2013). She cannot do
so on this record. As explained above, OPDAT managers renewed
complainant's term appointment for a full year after she engaged
in protected activity in July 2013. Moreover, Williams said
that she knew "for sure" that "there was no mention" of not
extending complainant's appointment "because she was filing

complaints" (Ex. 15 at 441).  Absent record evidence sufficient
to support a finding that OPDAT managers subjected her to a
hostile work environment and decided not to renew her term
appointment because she complained of sexual harassment in July
2013, complainant cannot succeed on her claim of retaliation.
Kwan, 737 F.3d at 845-847.

Decision

The record does not support a finding that complainant was
discriminated against on the basis of sex or reprisal.

_____
Mark L. Gross
Complaint Adjudication Officer

_____
Angela M. Miller
Attorney
Complaint Adjudication Office